Justice Kennedy
delivered the opinion of the Court.
The Tohono O’odham Nation (Nation) is an Indian Tribe with federal recognition. The Nation’s main reservation is in the Sonoran desert of southern Arizona. Counting this and other reservation lands, the Nation’s landholdings are approximately 3 million acres.
The Nation brought two actions based on the same alleged violations of fiduciary duty with respect to the Nation’s lands and other assets. One action was filed against federal officials in District Court and the other against the United States in the Court of Federal Claims (CFC). The Court of Appeals for the Federal Circuit held that the CFC suit was not barred by the rule that the CFC lacks jurisdiction over *310 an action “for or in respect to” a claim that is also the subject of an action pending in another court. 28 U. S. C. § 1500. The question presented is whether a common factual basis like the one apparent in the Nation’s suits suffices to bar jurisdiction under § 1500.
I
The case turns on the relationship between the two suits the Nation filed. The first suit was filed in the United States District Court for the District of Columbia against federal officials responsible for managing tribal assets held in trust by the Federal Government. The complaint alleged various violations of fiduciary duty with respect to those assets. The Nation claimed, for example, that the officials failed to provide an accurate accounting of trust property; to refrain from self-dealing; or to use reasonable skill in investing trust assets. The complaint requested equitable relief, including an accounting.
The next day the Nation filed the instant action against the United States in the CFC. The CFC complaint described the same trust assets and the same fiduciary duties that were the subject of the District Court complaint. And it alleged almost identical violations of fiduciary duty, for which it requested money damages. The CFC case was dismissed under § 1500 for want of jurisdiction.
A divided panel of the Court of Appeals for the Federal Circuit reversed. 559 F. 3d 1284 (2009). Two suits are for or in respect to the same claim, it reasoned, only if they share operative facts and also seek overlapping relief. Finding no overlap in the relief requested, the court held that the two suits at issue were not for or in respect to the same claim.
This Court granted certiorari. 559 U. S. 1066 (2010).
II
Since 1868, Congress has restricted the jurisdiction of the CFC and its predecessors when related actions are pending *311 elsewhere. Section 1500, identical in most respects to the original statute, provides:
“The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.”
The rule is more straightforward than its complex wording suggests. The CFC has no jurisdiction over a claim if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents.
The question to be resolved is what it means for two suits to be “for or in respect to” the same claim. Keene Corp. v. United, States, 508 U. S. 200 (1993), provided a partial answer. It held that two suits are for or in respect to the same claim when they are “based on substantially the same operative facts ..., at least if there [is] some overlap in the relief requested.” Id., at 212. The Keene case did not decide whether the jurisdictional bar also operates if the suits are based on the same operative facts but do not seek overlapping relief. Still, Keene narrows the permissible constructions of “for or in respect to” a claim to one of two interpretations. Either it requires substantial factual and some remedial overlap, or it requires substantial factual overlap without more.
Congress first enacted the jurisdictional bar now codified in § 1500 to curb duplicate lawsuits brought by residents of the Confederacy following the Civil War. The so-called “cotton claimants” — named for their suits to recover for cotton taken by the Federal Government — sued the United States in the Court of Claims under the Abandoned Property Collection Act, 12 Stat. 820, while at the same time suing *312 federal officials in other courts, seeking relief under tort law for the same alleged actions. See Keene, supra, at 206-207; Schwartz, Section 1500 of the Judicial Code and Duplicate Suits Against the Government and Its Agents, 55 Geo. L. J. 578, 574-580 (1967). Although the rule embodied in § 1500 originated long ago, Congress reenacted the statute at various times, most recently in 1948. See Act of June 25, 1948, 62 Stat. 942; Keene, 508 U. S., at 206-207.
The text of § 1500 reflects a robust response to the problem first presented by the cotton claimants. It bars jurisdiction in the CFC not only if the plaintiff sues on an identical claim elsewhere — a suit “for” the same claim — but also if the plaintiff’s other action is related although not identical — a suit “in respect to” the same claim. The phrase “in respect to” does not resolve all doubt as to the scope of the jurisdictional bar, but “it does make it clear that Congress did not intend the statute to be rendered useless by a narrow concept of identity.” Id., at 213. It suggests a broad prohibition, regardless of whether “claim” carries a special or limited meaning. Cf. United States v. Jones, 131 U. S. 1 (1889) (“claim” in the Little Tucker Act refers only to requests for money).
Of the two constructions of “for or in respect to” the same claim that Keene permits — one based on facts alone and the other on factual plus remedial overlap — the former is the more reasonable interpretation in light of the statute’s use of a similar phrase in a way consistent only with factual overlap. The CFC bar applies even where the other action is not against the Government but instead against a “person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.” The statute refers to a person who acts under eolor of federal law in respect to a cause of action at the time it arose. But at that time, the person could not act in respect to the relief requested, for no complaint was yet filed. This use of the phrase “in respect to a cause of action” *313 must refer to operative facts and not whatever remedies an aggrieved party might later request. A person acts under color of federal law in respect to a cause of action by claiming or wielding federal authority in the relevant factual context.
Although the two phrases are not identical — one is in respect to a claim, the other a cause of action — they are almost so, and there is reason to think that both phrases refer to facts alone and not to relief. As the Keene Court explained, “the term ‘claim’ is used here synonymously with ‘cause of action. ’ ” 508 U. S., at 210. And if either of the two phrases were to include both operative facts and a specific remedy, it would be the one that uses the term “cause of action” rather than “claim.” “Cause of action” is the more technical term, while “claim” is often used in a commonsense way to mean a right or demand. Here, for the reasons stated in the preceding paragraph, “in respect to a cause of action” refers simply to facts without regard to judicial remedies. So, if the phrase with the more technical of the two terms does not embrace the concept of remedy, it is reasonable to conclude that neither phrase does. Even if the terms “claim” or “cause of action” include the request for relief, the phrase “for or in respect to” gives the statutory bar a broader scope.
Reading the statute to require only factual and not also remedial overlap makes sense in light of the unique remedial powers of the CFC. The CFC is the only judicial forum for most nontort requests for significant monetary relief against the United States. See 28 U. S. C. § 1491 (2006 ed. and Supp. III); § 1346(a)(2) (2006 ed.). Unlike the district courts, however, the CFC has no general power to provide equitable relief against the Government or its officers. Compare United States v. King, 395 U. S. 1, 2-3 (1969), with 5 U. S. C. § 702; see also United States v. Alire, 6 Wall. 573, 575 (1868) (“[T]he only judgments which the Court of Claims are authorized to render against the government... are judgments for money found due from the government to the petitioner”). The distinct jurisdiction of the CFC makes over *314 lapping relief the exception and distinct relief the norm. For that reason, a statute aimed at precluding suits in the CFC that duplicate suits elsewhere would be unlikely to require remedial overlap.
Remedial overlap between CFC actions and those in other courts was even more unusual when § 1500’s rule was first enacted in 1868. At that time the CFC had a more limited jurisdiction than it does now, for the Tucker Act’s general waiver of sovereign immunity for nontort claims for monetary relief had not yet been enacted. See 24 Stat. 505. And while the district courts can today adjudicate suits against the United States for money damages under the Little Tucker Act, 28 U. S. C. § 1346(a)(2), and the Federal Tort Claims Act § 1346(b), in 1868 the United States could only be sued in the Court of Claims. United, States v. Mitchell, 463 U. S. 206, 212-214 (1983); G. Sisk, Litigation With the Federal Government § 4.02(a)(1) (4th ed. 2006). Because the kinds of suits and forms of relief available against the United States were few and constrained, remedial overlap between CFC suits and those in other courts was even less common then than now. If the statute were to require remedial as well as factual overlap, it would have had very limited application in 1868 despite its broad language that bars not only identical but also related claims. The rule in § 1500 effects a significant jurisdictional limitation, and Congress reenacted it even as changes in the structure of the courts made suits on the same facts more likely to arise. Doing so reaffirmed the force of the bar and thus the commitment to curtailing redundant litigation.
The panel of the Court of Appeals could not identify “any purpose that § 1500 serves today,” 559 F. 3d, at 1292, in large part because it was bound by Circuit precedent that left the statute without meaningful force. For example, the panel cited Tecon Engineers, Inc. v. United States, 170 Ct. Cl. 389, 343 F. 2d 943 (1965), which held that § 1500 does not prohibit two identical suits from proceeding so long as the action in *315 the CFC, or at that time the Court of Claims, is filed first. The Tecon holding is not presented in this case because the CFC action here was filed after the District Court suit.
Still, the Court of Appeals was wrong to allow its precedent to suppress the statute’s aims. Courts should not render statutes nugatory through construction. In. fact the statute’s purpose is clear from its origins with the cotton claimants — the need to save the Government from burdens of redundant litigation — and that purpose is no less significant today. The conclusion that two suits are for or in respect to the same claim when they are based on substantially the same operative facts allows the statute to achieve its aim. Keene, supra, at 206. Developing a factual record is responsible for much of the cost of litigation. Discovery is a conspicuous example, and the preparation and examination of witnesses at trial is another. The form of relief requested matters less, except insofar as it affects what facts parties must prove. An interpretation of § 1500 focused on the facts rather than the relief a party seeks preserves the provision as it was meant to function, and it keeps the provision from becoming a mere pleading rule, to be circumvented by carving up a single transaction into overlapping pieces seeking different relief. Cf. Casman v. United States, 135 Ct. Cl. 647 (1956) (CFC had jurisdiction notwithstanding common facts in district court suit because the plaintiff sought different relief in each forum).
Concentrating on operative facts is also consistent with the doctrine of claim preclusion, or res judicata, which bars “repetitious suits involving the same cause of action" once “a court of competent jurisdiction has entered a final judgment on the merits.” Commissioner v. Sunnen, 333 U. S. 591, 597 (1948). The jurisdictional bar in § 1500 was enacted in part to address the problem that judgments in suits against officers were not preclusive in suits against the United States. Matson Nav. Co. v. United States, 284 U. S. 352, 355-356 (1932). So it is no surprise that the statute *316 would operate in similar fashion. The now-accepted test in preclusion law for determining whether two suits involve the same claim or cause of action depends on factual overlap, barring “claims arising from the same transaction.” Kremer v. Chemical Constr. Corp., 456 U. S. 461, 482, n. 22 (1982); see also Restatement (Second) of Judgments §24 (1980). The transactional test is of course much younger than the rule embodied in § 1500, but even in the 19th century it was not uncommon to identify a claim for preclusion purposes based on facts rather than relief. See J. Wells, Res Adjudicata and Stare Decisis §241, p. 208 (1878) (“The true distinction between demands or rights of action which are single and entire, and those which are several and distinct, is, that the former immediately arise out of one and the same act or contract, and the latter out of different acts or contracts” (internal quotation marks omitted)); 2 H. Black, Law of Judgments §726, p. 866 (1891) (The test for identity is: “Would the same evidence support and establish both the present and the former cause of action”). Reading § 1500 to depend on the underlying facts and not also on the relief requested gives effect to the principles of preclusion law embodied in the statute.
There is no merit to the Nation’s assertion that the interpretation adopted here cannot prevail because it is unjust, forcing plaintiffs to choose between partial remedies available in different courts. The hardship in this case is far from clear. The Nation could have filed in the CFG alone and if successful obtained monetary relief to compensate for any losses caused by the Government’s breach of duty. It also seems likely that Indian tribes in the Nation’s position could go to district court first without losing the chance to later file in the CFC, for Congress has provided in every appropriations Act for the Department of the Interior since 1990 that the statute of limitations on Indian trust mismanagement claims shall not run until the affected tribe has been *317 given an appropriate accounting. See, e. g., 123 Stat. 2922; 104 Stat. 1930.
Even were some hardship to be shown, considerations of policy divorced from the statute’s text and purpose could not override its meaning. Although Congress has permitted claims against the United States for monetary relief in the CFC, that relief is available by grace and not by right. See Beers v. Arkansas, 20 How. 527,529 (1858) (“[A]s this permission is altogether voluntary on the part of the sovereignty, it follows that it may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted”). If indeed the statute leads to incomplete relief, and if plaintiffs like the Nation are dissatisfied, they are free to direct their complaints to Congress. This Court “enjoy[s] no ‘liberty to add an exception ... to remove apparent hardship.’ ” Keene, 508 U. S., at 217-218 (quoting Corona Coal Co. v. United States, 263 U. S. 537, 540 (1924)).
Keene reserved the question whether common facts are sufficient to bar a CFC action where a similar case is pending elsewhere. To continue to reserve the question would force the CFC to engage in an unnecessary and complicated remedial inquiry, and it would increase the expense and duration of litigation. The question thus demands an answer, and the answer is yes. Two suits are for or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on substantially the same operative facts, regardless of the relief sought in each suit.
Ill
The remaining question is whether the Nation’s two suits have sufficient factual overlap to trigger the jurisdictional bar. The CFC dismissed the action here in part because it concluded that the facts in the Nation’s two suits were, “for all practical purposes, identical.” 79 Fed. Cl. 645,656 (2007). It was correct to do so.
*318 The two actions both allege that the United States holds the same assets in trust for the Nation’s benefit. They describe almost identical breaches of fiduciary duty — that the United States engaged in self-dealing and imprudent investment, and failed to provide an accurate accounting of the assets held in trust, for example. Indeed, it appears that the Nation could have filed two identical complaints, save the caption and prayer for relief, without changing either suit in any significant respect.
Under § 1500, the substantial overlap in operative facts between the Nation’s District Court and CFC suits precludes jurisdiction in the CFC. The Court of Appeals erred when it concluded otherwise.
IV
The holding here precludes the CFC from exercising jurisdiction over the Nation’s suit while the District Court case is pending. Should the Nation choose to dismiss the latter action, or upon that action’s completion, the Nation is free to file suit again in the CFC if the statute of limitations is no bar. In the meantime, and in light of the substantial overlap in operative facts between them, the two suits are “for or in respect to” the same claim under § 1500, and the CFC case must be dismissed. The contrary judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

Justice Kagan took no part in the consideration or decision of this case.