# United States Court of Appeals for the Federal Circuit

———————————

CENTRAL PINES LAND COMPANY, L.L.C., D, S, &
T, INC., DROST & BRAME, INC., LINDA LEW
LAWTON DROST, EVELYN GAY LAWTON DUHON,
JACK E. LAWTON, JR., TOWER MINERALS
COMPANY, L.L.C., JACK E. LAWTON, SR.,
AND WILLIAM B. LAWTON COMPANY, L.L.C.,
*Plaintiffs-Appellants,*

v.

UNITED STATES,
*Defendant-Appellee.*

———————————

2012-5002

———————————

Appeal from the United States Court of Federal
Claims in case no. 98-CV-314, Judge Nancy B. Firestone.

———————————

Decided: October 15, 2012

———————————

ANDREW JACKSON GRAY, III, The Gray Law Firm,
PLC, of Lake Charles, Louisiana, argued for plaintiffs-
appellants.

KATHERINE J. BARTON, Attorney, Environment and
Natural Resources Division, United States Department of

Justice, of Washington, DC, argued for defendant-appellee.  With her on the brief were IGNACIA S. MORENO, Assistant Attorney General, and AARON P. AVILA, Attorney.

———————————

Before NEWMAN, LOURIE, and PROST, *Circuit Judges.*

PROST, *Circuit Judge.*

Central Pines Land Company, L.L.C., D, S, & T, INC., Drost & Brame, INC., Linda Lew Lawton Drost, Evalyn Gay Lawton Duhon, Jack E. Lawton, JR., Tower Minerals Company, L.L.C., Jack E. Lawton, SR., and William B. Lawton Company, L.L.C. (collectively, "Central Pines" or "plaintiffs") appeal the decision of the United States Court of Federal Claims ("Claims Court") to dismiss their takings claims for lack of jurisdiction pursuant to 28 U.S.C. § 1500.  *Central Pines Land Co. v. United States*, 99 Fed. Cl. 394 (2011).  Because § 1500 barred the Claims Court from having jurisdiction over this action, we affirm.

## BACKGROUND

The progression of Central Pines's two suits informs the § 1500 issue before us.  On August 22, 1996, Central Pines and others, some of whom are not party to the current action, filed suit against the United States, et al., in the U.S. District Court for the District of Louisiana.  Central Pines alleged it was the owner of all oil, gas, and other minerals underlying property in Vernon Parish, Louisiana, which it subdivided into Group A, Group B, and Group C mineral servitudes.  It claimed that between 1943 and 1978, the United States imposed a drilling and operations moratorium on the three groups and that the surface has continually been used for bombing and artillery practice.  It further alleged that starting in 1992, the

United States, claiming ownership over the mineral rights, has granted a series of oil and gas leases covering the property in interest. Based on these factual allegations, Central Pines filed for declaratory judgment quieting title to the property. In the alternative, it alleged an unconstitutional taking without just compensation in violation of the Fifth Amendment.

In a pair of decisions issued on April 7, 1999 and July 28, 2008, the district court granted summary judgment to the United States with regards to Group A and Group B mineral servitudes because the Louisiana prescription period was not suspended by the government's moratoriums. With regards to Group C, the district court granted summary judgment to Central Pines, finding that the Group C servitude was imprescriptible. On November 28, 2001, the Fifth Circuit affirmed the district court. *Central Pines Land Co. v. United States*, 274 F.3d 881 (5th Cir. 2001). On October 7, 2002, Central Pines's petition for writ of certiorari was denied. *Central Pines Land Co. v. United States*, 537 U.S. 822 (2002).

On April 3, 1998, while summary judgment motions were pending in district court, Central Pines filed a complaint in the Claims Court, alleging a taking without just compensation in violation of the Fifth Amendment. As in its district court complaint, Central Pines alleged it was the owner of all oil, gas, and other minerals underlying property in Vernon Parish, Louisiana, which it subdivided into Group A, Group B, and Group C mineral servitudes. It claimed that between 1943 and 1978, the United States imposed a drilling and operations moratorium on the three groups and that the surface has continually been used for bombing and artillery practice. It further alleged that starting in 1992, the United States, claiming ownership over the mineral rights, has granted a

series of oil and gas leases covering the property in interest. Central Pines acknowledged that it had filed suit against the United States, et al., in district court for quiet title and, alternatively, for an unconstitutional taking in violation of the Fifth Amendment. Central Pines explained that its Claims Court suit was brought in the alternative of its district court action, and requested that its Claims Court suit be stayed pending resolution in the district court.

The Claims Court granted the stay, which remained in place until November 12, 2002. Upon lifting the stay, the Claims Court ordered plaintiffs to amend their complaint, and on January 6, 2003, plaintiffs filed a First Amended and Restated Complaint. They alleged a temporary taking of the Group C mineral servitude and permanent taking of Group A and Group B mineral servitudes. The complaint reiterated the same factual allegations to title and the same government conduct made in the original complaint, and added allegations based on the resolution of the district court action. Litigation with regard to these three mineral servitudes proceeded. In 2004, the Claims Court dismissed the Group A and Group B claims and limited the Group C claim to post-1992 action. *Central Pines Land Co. v. United States*, 61 Fed. Cl. 527, 530 (2004). After denial of summary judgment in 2008, *Central Pines Land Co. v. United States*, No. 98-314 (Fed. Cl. Sept. 30, 2008), the case proceeded to trial. At trial, the Claims Court found that the government's issuance of protective leases commencing after May 1, 1997, constituted a temporary taking for which Central Pines was entitled to compensation. *Central Pines Land Co. v. United States*, 95 Fed. Cl. 633, 651-53 (2010).

On May 26, 2011, while the parties were briefing the question of attorneys fees and costs and prior to the entry of final judgment, the United States filed a motion to dismiss for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1500, in light of the Supreme Court's recent decision in *United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723 (2011). On September 7, 2011, the Claims Court granted the United States' motion to dismiss. *Central Pines Land Co. v. United States*, 99 Fed. Cl. 394 (2011). The Claims Court compared the district court complaint and the original Claims Court complaint line-by-line, finding that the operative facts alleged in the two complaints were nearly identical. *Id.* at 400-02. Because these two complaints shared the same operative facts and thus were "for or in respect to" the same claim, § 1500 precluded the Claims Court from exercising jurisdiction over the plaintiffs' original Claims Court complaint, which was filed while the district court action was pending. *Id.* The Claims Court also rejected plaintiffs' argument that their First Amended and Restated Complaint was a supplemental complaint that vested the Claims Court with jurisdiction previously lacking over the original complaint. *Id.* at 402-03.

Central Pines appeals the dismissal of its Claims Court action. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DECISION

We review the Claims Court's decision to dismiss a case for lack of subject matter jurisdiction de novo. *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). Section 1500 limits the Claims Court's jurisdiction when a related action is pending in another court. Specifically, the statute provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500. Because subject matter jurisdiction depends on the state of things at the time of the Claims Court action that was brought, we look to the facts as they exist when a plaintiff filed his Claims Court complaint to determine if § 1500 applies. *Keene Corp. v. United States*, 508 U.S. 200, 207-08 (1993). If a plaintiff, upon filing, has a suit pending in any other court "for or in respect to" the same claim, § 1500 bars jurisdiction over the Claims Court suit. *Id.* at 209. "Two suits are for or in respect to the same claim, precluding jurisdiction in the [Claims Court], if they are based on substantially the same operative facts, regardless of the relief sought in each suit," *Tohono O'Odham*, 131 S. Ct. at 1731, or the legal theories asserted, *Keene*, 508 U.S. at 210.

On appeal, plaintiffs do not dispute that the district court action was pending when they filed their Claims Court action in 1998. Rather, plaintiffs argue that § 1500 does not bar their Claims Court action because the Claims Court action and district court action were *decided* on different facts—specifically, different time periods.[1] In

---

[1] As a corollary to this argument, plaintiffs dispute whether Rule 12(b)(1) of the Rules of the U.S. Court of Federal Claims ("RCFC") was the proper mechanism for the government to move for dismissal at the late stage of litigation. It was. An objection to a court's subject matter

essence, plaintiffs are advocating a comparison of the state of the two suits at the time the motion to dismiss was filed by the government or considered by the Claims Court. The problem for plaintiffs, though, is that this argument has been soundly rejected time and again. *Keene*, 508 U.S. at 208; *Dico, Inc. v. United States*, 48 F.3d 1199, 1203-04 (Fed. Cir. 1995) (explaining that "the § 1500 bar rises, if at all, at the time the complaint is filed in the Court of Federal Claims, . . . and is based on well-plead allegations"); *UNR Indus., Inc. v. United States*, 962 F.2d 1013, 1022 (Fed. Cir. 1992) (en banc) *aff'd sub nom. Keene*, 508 U.S. 200 ("There is nothing in section 1500 to suggest a free floating jurisdictional bar that attaches only when the government files a motion to dismiss, or worse, when the court gets around to acting on it."). Thus, to the extent that plaintiffs rely on the ultimate determinations of the district court and Claims Court, which were based on different time periods of alleged government action, their reliance is misplaced because the § 1500 jurisdictional bar attaches, if at all, at filing.

To determine whether the § 1500 bar attached when plaintiffs filed their Claims Court action, we compare the operative facts asserted at the time the two complaints were filed. *See Tohono O'Odham*, 131 S. Ct. at 1731; *Trusted Integration*, 659 F.3d at 1169. A review of the complaint filed by plaintiffs at the district court and at the Claims Court reveals that the factual allegations are very similar, save the captions, sections related to relief, and acknowledgement of the district court action in the

---

jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07 (2006).

Claims Court complaint.  Both complaints describe, using identical language, the same three groups of mineral servitudes, the same history of conveyances of the land from the 1920s through the 1980s, the same military and Forest Service use of the land, the same drilling and operations moratorium, and the same claim by the United States of ownership over the mineral leases. Both complaints allege that the government had recognized plaintiffs as mineral owners but had been continuously using the land overlaying the mineral interests for heavy military use since 1943, and that the government had granted leases to the mineral servitudes as early as 1992.  These are not mere background facts; they are critical to plaintiffs' claims in both actions.  In fact, both complaints allege these facts within the context, inter alia, of a takings claim.[2]  The district court complaint also alleges a quiet title action in which plaintiffs' claim of rightful ownership to the mineral servitudes is based on these same exact facts.  Because plaintiffs filed two nearly identical complaints that, at best, repackaged the same conduct into two different theories, and at worst, alleged the same takings claim, we find that there is a substantial overlap of operative facts that implicates the § 1500 bar.  *See, e.g.*, *Tohono O'Odham*, 131 S. Ct. at 1731 (finding two suits had substantial overlap of operative facts where tribe could have filed two nearly identical complaints without changing the claim in either suit in any significant way); *Trusted Integration*, 659 F.3d 1166-67.

---

[2]    In the district court complaint, Central Pines alleges a takings claim as an alternative to the quiet title action.  Although Central Pines subsequently filed the same takings claim in the Claims Court, it never moved to dismiss the takings claim before the district court, and thus a takings claim was pending when Central Pines filed its complaint at the Claims Court.

Anticipating that § 1500 divests the Claims Court of jurisdiction over their original complaint, plaintiffs argue that their First Amended And Restated Complaint is a de facto supplemental complaint that vested the Claims Court with jurisdiction in 2003, after the district court litigation had become final. That pleading reiterates almost all of the facts and allegations made in the original complaint, but adds paragraphs relating to the conclusion of the district court action and divides the original takings claim into two counts—one count alleging a permanent taking of Group A and B mineral servitudes and one count alleging a temporary taking of the Group C mineral servitude. We agree with plaintiffs that their 2003 pleading constitutes a supplemental complaint (rather than an amended complaint) because it sets out a "transaction, occurrence, or event that happened after the date of the pleading to be supplemented." RCFC 15(d).

But, we disagree with plaintiffs that their supplemental complaint can cure the § 1500 jurisdictional bar precluding their original complaint.[3] Generally, "'jurisdiction of the court depends upon the state of things at the time of the action brought.'" *Grupo Dataflux v. Atlas Global Grp.*, 541 U.S. 567, 570 (2004) (quoting *Mollan v. Torrance*, 9 Wheat. 537, 539 (1824)). While we have held that certain circumstances may exist in which a supple-

---

[3]    To the extent plaintiffs rely on the discussion in *Rockwell International Corp. v. United States*, 549 U.S. 457, 474 (2007), to aid their argument, that case is distinguishable. In that case, jurisdiction existed when the case was filed and the question was whether the amended complaint subsequently divested the court of jurisdiction; here, plaintiffs argue the inverse. *Id.* Similarly, several other cases relied on by plaintiffs relate to amended rather than supplemental complaints, and thus are not on point.

mental complaint can cure a defect in subject matter jurisdiction, these circumstances "depend[] on a careful reading of the substantive provision at issue." *Black v. Sec'y of Health & Human Servs.*, 93 F.3d 781, 790 (1996). In instances where statutes impose a prerequisite to filing which a plaintiff has failed to meet upon filing, a supplemental complaint may cure such a defect. *See Mathews v. Diaz*, 426 U.S. 67, 75 (1976) (allowing supplemental complaint to cure failure of a plaintiff to meet statute's administrative exhaustion requirements); *Black*, 93 F.3d at 790 (allowing a supplemental complaint to cure a petition that was defective because it was filed before the $1,000 threshold of reimbursable expenses required by the Vaccine Act was reached).[4]  By contrast, if a statute contains an express prohibition against filing suit, then a supplemental complaint cannot cure the lack of jurisdiction existing at the onset. *Black*, 93 F.3d at 790 (citing *McNeil v. United States*, 508 U.S. 106, 110-11 (1993), and

---

[4]    Recent cases bring into question whether the statutory limitations implicated in these cases are truly jurisdictional or are "nonjurisdictional 'claim-processing rules.'" *See Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) (noting that in the past, the Court was less than meticulous in rendering statutory language jurisdictional); *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, (2011) (holding that the 120-day filing deadline at issue was "[a]mong the types of rules that should not be described as jurisdictional" but rather "claim processing rules"); *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1248 (2010) (holding copyright statute's registration requirement a nonjurisdictional condition although previously held to be jurisdictional); *Arbaugh*, 546 U.S. at 510-11 (holding that employee-numerosity requirement of Title VII was not jurisdictional).  Regardless, these same cases only confirm that § 1500 is indeed a jurisdictional statute. *See, e.g.*, *Henderson*, 131 S. Ct. at 1204 (noting that when Congress intends a statute to be jurisdictional it casts the provision in explicit jurisdictional terms).

*Halstrom v. Tillamook Cnty.*, 493 U.S. 20, 25-26 (1989)). It would defeat the purpose of the prohibition to permit a plaintiff to file his complaint during the prohibited period and then, after the prohibited period expired, rely on a supplemental complaint to cure the jurisdictional defect. *Id.*

Section 1500 falls squarely within the latter category; it serves as an "express prohibition against filing claims for which another suit [is] pending." *Keene*, 508 U.S. at 208-09; *see Black*, 93 F.3d at 791. The statute explicitly states that the Claims Court "shall not have jurisdiction" over "any claim" that a party has pending in another court. 28 U.S.C. § 1500. This language creates a mandatory prohibited period—the duration of the district court action for the same claim—during which the Claims Court cannot have jurisdiction over any action initiated by plaintiff for the claim. *Keene*, 508 U.S. at 509; *UNR Indus.*, 962 F.2d at 1021 ("By the plain language of section 1500, if the same claim is pending in another court while the plaintiff files his complaint in the Claims Court, *there is no jurisdiction, period*, even if the conflicting claim is no longer pending . . ." (emphasis added)); *cf. Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 661-62 (2007) (collecting cases that note Congress's use of "shall" indicates a mandatory requirement void of judicial discretion). The predecessor statute confirms that § 1500 bars jurisdiction over a Claims Court action initiated during the prohibited period. That statute (which has changed in phraseology only)[5] states that "no person *shall file* . . . any claim . . . for or in respect to which he . . . has pending any suit or process in any other court." Act of Mar. 3, 1911, ch. 231, § 154, 36 Stat. 1138

---

[5] *See* H.R. Rep. No. 308, 80th Cong., 1st Sess., A140 (1947).

(emphasis added); *see Keene*, 508 U.S. at 209 (holding amending of "shall file or prosecute" to "shall not have jurisdiction" was not substantive). Together, the plain language of the statute and legislative history leave "no doubt that at least a time-of-filing rule applie[s]" such that jurisdiction under § 1500 is dependent on the state of things when the action is brought, and cannot be rescued by subsequent action of either party or by resolution of the co-pending litigation. *See Keene*, 508 U.S at 207-09; *UNR Indus.*, 962 F.2d at 1021-22 (holding it readily apparent that "any suit *filed* in the Court of Claims when the same claim was pending in another court . . . had to be dismissed, . . . *regardless* of intervening actions in the conflicting case" (emphases added)); *British Am. Tobacco Co. v. United States*, 98 Ct. Cl. 438, 441 (1939) (rejecting, under § 1500's predecessor, the contention that once the co-pending district court litigation was final, a party could prosecute its claim filed prior to the final resolution). Thus, the Claims Court cannot retroactively acquire jurisdiction, via the filing of a supplemental complaint or otherwise, after a co-pending district court action is final; "The [Claims Court] suit must be dismissed and refiled to avoid § 1500." *Trusted Integration*, 659 F.3d at 1166 n.2 (citing *Tohono*, 121 S. Ct. at 1731).

Because plaintiffs filed a complaint in the Claims Court "for or in respect to" the same claim as their pending district court action, their Claims Court action lacked jurisdiction under § 1500. Their supplemental complaint did not create jurisdiction where none existed at the time the suit was filed.[6] We affirm the Claims Court's dismissal for lack of jurisdiction.

---

[6] To the extent that § 1500 may impose hardship upon plaintiffs, the Supreme Court has made clear that the statutory language of § 1500 leaves no room to ac-

**AFFIRMED**

---

count for such hardship. *Tohono O'Odham*, 131 S. Ct. at 1731 ("Even were some hardship to be shown, considerations of policy divorced from the statute's text and purpose could not override its meaning."); *Keene*, 508 U.S. at 217-218; *Corona Coal Co. v. United States*, 263 U.S. 537, 540 (1924) ("[T]he words of the statute are plain . . . no room is left for construction, and we are not at liberty to add an exception in order to remove apparent hardship in particular cases.").