**U.S. HOME CORPORATION, Beechwood at Edison, LLC, Beechwood Shopping Center, LLC, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 09–63 C

United States Court of Federal Claims.

(Filed December 14, 2012)

Lee Henig–Elona, West Orange, NJ, for plaintiffs.

Kenneth D. Woodrow, United States Department of Justice, with whom were Stuart F. Delery, Acting Assistant Attorney General, Jeanne E. Davidson, Director, Brian M. Simkin, Assistant Director, Washington, DC, for defendant.

28 U.S.C. § 1500 (2006); *United States v. Tohono O'odham Nation,* —— U.S. ——, 131 S.Ct. 1723, 179 L.Ed.2d 723 (2011); Substantially the Same Operative Facts in Suit Pending Before a District Court.

## OPINION

Bush, Judge.

This suit, originally filed February 3, 2009, seeks money damages for hazardous waste contamination of land sold by the United States to plaintiffs. In an earlier opinion, the court dismissed Counts II and III of the complaint for lack of subject matter jurisdiction, because these counts were not founded on a money-mandating statute. *U.S. Home Corp. v. United States,* 92 Fed.Cl. 401, 412 (2010) (*U.S. Home I* ). Subsequently, upon defendant's motion for partial summary judgment, the court dismissed part of Count I of the complaint, a claim for breach of an implied-in-fact contract regarding the environmental condition of property sold by the United States. *U.S. Home Corp. v. United States,* No. 09-63C, 2010 WL 4689883 (Fed. Cl. Nov. 9, 2010) (*U.S. Home II* ). The only remaining claim in this case is for a breach of deed covenants, found in Count I of the complaint.

On July 6, 2012, the court raised the question of subject matter jurisdiction *sua sponte,* in light of a recent change in controlling precedent regarding the application of 28 U.S.C. § 1500 (2006). *See United States v. Tohono O'odham Nation,* —— U.S. ——, 131 S.Ct. 1723, 179 L.Ed.2d 723 (2011). The jurisdictional issue has been fully briefed by the parties and is ripe for a decision by the court. The parties' briefs as submitted are: Defendant's Memorandum Regarding the Application of 28 U.S.C. § 1500 (Def.'s Br.); Plaintiffs' *Tohono O'odham* Response Brief (Pls.' Br.); and, Defendant's Reply in Support of Its Memorandum Regarding the Application of 28 U.S.C. § 1500 (Def.'s Reply). Dismissal is required because plaintiffs filed a suit in a district court before they filed suit in this court, and the pending district court suit was based on substantially the same operative facts as the subject matter.

## BACKGROUND

### I. Facts

Plaintiffs U.S. Home Corporation, Beechwood at Edison, LLC and Beechwood Shopping Center, LLC (collectively, the Developers) are or were the owners of approximately 29 acres of real estate (the Property), which was at one time part of the former Raritan Arsenal, a 3200–acre United States Army facility in New Jersey.[1]  Compl. ¶¶ 1–3, 6.[2]

---

**1.** Although Beechwood at Edison, LLC is no longer an owner of the Property, having con-

veyed the two parcels making up the Property to U.S. Home Corporation and Beechwood Shop-

The United States General Services Administration (GSA) sold one of the two constituent parcels of the Property, approximately 23 acres, to TWC Realty Company (TWC) in 1989. *Id.* ¶¶ 4, 16. TWC then sold this parcel to Beechwood at Edison, LLC in 2002. *Id.* ¶ 16. GSA sold the second constituent parcel of the Property, approximately 5 acres, to Beechwood at Edison, LLC in 2003. *Id.* ¶¶ 4, 17. Beechwood at Edison, LLC consolidated and subdivided the Property, conveying part to U.S. Home Corporation in 2005 and 2008, and part to Beechwood Shopping Center, LLC at a later date. *Id.* ¶ 18. Both residential and commercial development of the Property have commenced.

According to plaintiffs, hazardous waste contamination of the Property was discovered in 2005 and 2006, and state officials compelled plaintiffs to alter their development plans for the Property as a result. Compl. ¶¶ 22–25, 37–40. The Developers have incurred and will incur expenses related to soil capping and venting measures, as well as the installation, monitoring and maintenance of engineering controls. *Id.* ¶¶ 35, 37, 40. Plaintiffs also assert that the contamination of the Property has reduced the value of the Property and has caused other monetary damages, such as those related to construction delays, financing costs, sale price reductions, lost sales and lost rental income. *Id.* ¶¶ 48–60. Plaintiffs assert that the United States breached deed covenants as to the environmental condition of the Property, and that the government is liable to plaintiffs as a result of that breach. *Id.* at 11–12.

## II. Procedure

In 2008, two of the plaintiffs in this suit, U.S. Home Corporation and Beechwood at Edison, LLC, filed a complaint against the United States in the United States District Court for the District of New Jersey. *U.S. Home Corp. v. United States*, No. 2:08–cv–04144–WJM–MF (D.N.J. filed Aug. 15, 2008) (District Court Complaint or DNJ Compl.). The district court plaintiffs sought relief founded on the Comprehensive Environmen-

tal Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9601–9675 (2006), among other sources of law. In particular, the plaintiffs relied on CERCLA § 107(a)(2)-(3), 42 U.S.C. § 9607(a)(2)-(3), to seek reimbursement from the United States for the monies they had expended to respond to the contamination of the Property. The plaintiffs, relying on CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), also sought a declaratory judgment as to the liability of the United States for past and future response costs incurred by the owners of the Property. A portion of the original district court suit was dismissed without prejudice and was re-filed as a complaint in this court (Compl.) on February 3, 2009. *U.S. Home I*, 92 Fed.Cl. at 404–05. The district court suit was settled by the parties and was dismissed on July 20, 2010. Def.'s Br. at 4.

In *U.S. Home I*, this court rejected the government's jurisdictional challenge to the complaint based on § 1500. 92 Fed.Cl. at 410. The application of § 1500 then dictated by precedent, however, has since been overruled by the United States Supreme Court. *See Tohono O'odham*, 131 S.Ct. at 1730 (describing § 1500 jurisprudence binding on this court at that time as "wrong [because it] suppress[ed] the statute's aims"); *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1164 (Fed.Cir.2011) (noting that *Tohono O'odham* "clarified" precedent regarding the application of § 1500). Because this court applied a test for jurisdiction that has now been rejected by the Supreme Court, this court's prior ruling regarding § 1500 is infirm. In this opinion, the court follows *Tohono O'odham* to properly apply § 1500 to the procedural circumstances of this case.

## DISCUSSION

### I. Standard of Review

■ "A party, or the court *sua sponte*, may address a challenge to subject matter jurisdiction at any time...." *Booth v. United States*, 990 F.2d 617, 620 (Fed.Cir.1993) (citations omitted). When reviewing a com-

---

ping Center, LLC, Beechwood Shopping Center, LLC is an affiliate of Beechwood at Edison, LLC. Compl. ¶ 3.

2. All citations to the complaint in this opinion are to the original complaint filed February 3, 2009. *See infra* note 3.

plaint to determine its jurisdiction over a plaintiff's claims, this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 814–15, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988) (citations omitted). However, plaintiffs bear the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)), and must do so by a preponderance of the evidence, *Reynolds,* 846 F.2d at 748 (citations omitted). If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

## II. Relevant Section 1500 Jurisprudence

### A. Evolving Precedent

Section 1500 imposes a limit on this court's jurisdiction. In relevant part, the statute reads:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States....

28 U.S.C. § 1500. "The statute was [originally] enacted to prevent duplicative lawsuits brought by residents of the former Confederacy." *Trusted Integration,* 659 F.3d at 1163 (citation omitted). As the United States Court of Appeals for the Federal Circuit has stated, "the statute was enacted to prevent a claimant from seeking recovery in district court and the Court of Claims for the same conduct pleaded under different legal theories." *Id.*

In this court, the application of the jurisdictional bar in § 1500 had for some years required an examination of the operative facts underlying the claims in the two suits, as well as the relief requested in the two suits:

> For the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from *the same operative facts,* and must seek *the same relief.*

*Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545, 1551 (Fed.Cir.1994) (*en banc*). It is this approach that was recently rejected by the Supreme Court in *Tohono O'odham* and its clarification of § 1500 precedent. The relief requested in the district court and the relief requested in this court are no longer a focus of the § 1500 analysis. *Trusted Integration,* 659 F.3d at 1164 (stating that this court must "focus[ ] only on the operative facts" when resolving a § 1500 challenge to a complaint filed in this court).

### B. Whether Two Suits Share "Substantially the Same Operative Facts"

The Supreme Court in *Tohono O'odham* noted that its § 1500 precedent had not yet answered "whether common facts are sufficient to bar a CFC action where a similar case is pending elsewhere." 131 S.Ct. at 1731 (citing *Keene Corp. v. United States,* 508 U.S. 200, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993)). *Tohono O'odham* answered that question in the affirmative and provided a new description of the jurisdictional bar imposed by § 1500:

> Two suits are for or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on substantially the same operative facts, regardless of the relief sought in each suit.

*Id.* Thus, the essential question in the application of § 1500 to this case is whether the suit pending in the district court was based on substantially the same operative facts as the case filed here. "Determining whether two suits are based on substantially the same operative facts 'requires a comparison between the claims raised in the Court of Federal Claims and in the other lawsuit.'" *Trusted Integration,* 659 F.3d at 1164 (quoting *Keene,* 508 U.S. at 210, 113 S.Ct. 2035).

### C. Inquiry into Operative Facts

In *Trusted Integration,* the Federal Circuit quoted extensively from the *Tohono O'odham* decision and made several observa-

tions which are instructive. As to the purpose of § 1500, the Federal Circuit first noted that "the statute was enacted to prevent a claimant from seeking recovery in district court and the Court of Claims for the same conduct pleaded under different legal theories." *Trusted Integration*, 659 F.3d at 1163. The Federal Circuit also provided this summary of its interpretation of the holding in *Tohono O'odham*:

> [W]e must: (1) not view § 1500 narrowly; (2) focus only on whether two claims share the same operative facts and not on the relief requested; and (3) determine whether two suits share substantially the same operative facts by applying the test developed in *Keene Corp.* It is clear, moreover, that our analysis should consider the principles of res judicata to which the Supreme Court pointed.

*Id.* at 1164. Furthermore, the Federal Circuit noted that "the legal theories underlying the asserted claims are not relevant" to the *Keene* test for determining whether two suits share substantially the same operative facts. *Id.* (citing *Keene*, 508 U.S. at 212, 113 S.Ct. 2035 ).

### D. Government Conduct Provides the Operative Facts for a Claim

The term "operative facts" requires some elucidation. The Supreme Court in *Tohono O'odham* succinctly described the essence of the *Keene* inquiry as this court's determination "whether the [plaintiff's] two suits have sufficient factual overlap to trigger the jurisdictional bar." 131 S.Ct. at 1731. Elsewhere in the opinion, the Court noted that the question before it was "whether a common factual basis like the one apparent in the [Tohono O'odham] Nation's suits suffices to bar jurisdiction under § 1500." *Id.* at 1727. In that case, "the substantial overlap in operative facts between the Nation's District Court and CFC suits preclude[d] jurisdiction in the CFC." *Id.* at 1731. But the Supreme Court in *Tohono O'odham* did little to explain what is meant by "operative facts."

■ Other cases provide the necessary explanation. A distinction must be drawn between background facts, which describe the context for the claims presented in each suit, and operative facts, which provide the essential elements of the government conduct at issue in the two suits. *See, e.g., Central Pines Land Co., L.L.C. v. United States,* 697 F.3d 1360, 1365 (Fed.Cir.2012) (distinguishing between "mere background facts" and operative facts); *Trusted Integration,* 659 F.3d at 1168 (distinguishing between facts that are noted in a complaint as being in existence, and facts that are "relevant" to a particular breach claim asserted in that complaint). In precedential cases discussing § 1500, the operative facts presented in the complaints filed in the two courts are those which identify government conduct that gives rise to claims against the United States. *See, e.g., Tohono O'odham,* 131 S.Ct. at 1731 (discussing complaints which alleged breaches of fiduciary duty by the United States acting as the trustee of tribal funds and property); *Keene,* 508 U.S. at 203–05, 113 S.Ct. 2035 (discussing complaints filed by an asbestos manufacturer which asserted that government conduct was implicated in asbestos related injuries); *Trusted Integration,* 659 F.3d at 1162–63 (discussing complaints alleging breaches of contract and fiduciary duties arising from an information technology supplier's business relationships with the United States); *Harbuck v. United States,* 378 F.3d 1324, 1328–29 (Fed.Cir.2004) (discussing complaints alleging pay discrimination against women in the United States Air Force). The term "operative facts," in the context of § 1500, refers to facts alleging government conduct which gives rise to claims against the United States.

■ Thus, if substantially the same government conduct supports the claims brought in a district court and the claims brought in this court, § 1500 bars the suit in this court. *See, e.g., Trusted Integration,* 659 F.3d at 1165 (holding that a claim was barred in this court because "nearly identical conduct" was alleged to support claims pending before a district court). It is important to emphasize that the jurisdictional bar of § 1500 cannot be avoided by simply dividing challenges to the same government conduct into two complaints, each seeking recovery under a different legal theory. *See id.* at 1166 (stating that "since *Keene,* it has been clear that the legal

theories asserted before the district court and the CFC are irrelevant to whether the claims arise from substantially the same operative facts") (citing *Keene*, 508 U.S. at 212, 113 S.Ct. 2035). In other words, if the suits share a "common factual basis," *Tohono O'odham*, 131 S.Ct. at 1727, so that the same or substantially the same underlying government conduct is challenged in the claims filed in suits before a district court and this court, § 1500 operates as a bar to the claims filed in this court. *See, e.g., Central Pines*, 697 F.3d at 1365 ("Because plaintiffs filed two nearly identical complaints that, at best, repackaged the same conduct into two different theories, and at worst, alleged the same takings claim, we find that there is a substantial overlap of operative facts that implicates the § 1500 bar."); *Harbuck*, 378 F.3d at 1329 (rejecting the argument that a claim "centered on ... non-selection for promotion" could proceed in the district court, and a claim "centered around ... not receiving the same pay" could proceed in this court, where both complaints contained substantial factual overlap in the discriminatory conduct alleged, and presented "the same underlying claim that the Air Force discriminated against women by paying them less than men") (internal punctuation omitted).

### E. Res Judicata Principles

When the Supreme Court recently addressed the proper application of § 1500, a parallel was drawn between this jurisdictional bar and res judicata principles. *Tohono O'odham*, 131 S.Ct. at 1730. The Court noted that "[c]oncentrating on operative facts is ... consistent with the doctrine of claim preclusion, or res judicata, which bars 'repetitious suits involving the same cause of action' once 'a court of competent jurisdiction has entered a final judgment on the merits.'" *Id.* (quoting *Comm'r v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948)). The Court thus emphasized that a jurisdictional bar which prevents duplicative suits from being filed is functionally similar to a legal doctrine which prevents repetitive suits from being prosecuted. *See id.* (stating that "it is no surprise that [§ 1500] would operate in similar fashion" as the doctrine of res judicata). Because res judicata principles fo-

cus on the operative facts in two repetitive suits, a proper application of § 1500 must as well. *Id.* ("Reading § 1500 to depend on the underlying facts and not also on the relief requested gives effect to the principles of preclusion law embodied in the statute.").

In *Trusted Integration*, the Federal Circuit discussed the principles of res judicata mentioned in the *Tohono O'odham* opinion and explained the relevance of such principles to the operational facts inquiry and the application of § 1500's jurisdictional bar. First, the Federal Circuit specified that "the [res judicata] principles that were in force at the time the predecessor to § 1500 was enacted" should be considered, not the modern tests for res judicata or claim preclusion. *Trusted Integration*, 659 F.3d at 1168–69 & n. 4. Second, the court identified two appropriate tests for claim preclusion: the "act or contract test" and the "evidence test." *Id.* at 1169 (citing *Tohono O'odham*, 131 S.Ct. at 1730).

The Federal Circuit noted in the appeal before it that neither the "act or contract test" nor the "evidence test" indicated that a breach of a licensing agreement claim filed in the Court of Federal Claims was the "same claim" as any claim filed in the district court; this analysis further supported the appellate court's conclusion that the breach of licensing agreement claim was not barred by § 1500. *Id.* at 1169–70. Thus, these tests supported the Federal Circuit's conclusion that the district court claims and the breach of a licensing agreement claim in the Court of Federal Claims did "not arise from substantially the same operative facts." *Id.* at 1170. The Federal Circuit made it clear, however, that the *Keene* test for determining whether two suits are based on substantially the same operative facts is the primary tool to be used by this court, and that the consideration of res judicata principles is merely a secondary inquiry. *See id.* at 1164, 1170 n. 5.

The secondary inquiry as to res judicata principles is not without force, however. In some cases, a res judicata test may be highly indicative of the proper application of § 1500's jurisdictional bar:

We do not adopt these 19th century [res judicata] tests as the standard by which to measure whether two claims arise from substantially the same set of operative facts, nor do we believe *Tohono* directs us to do so. Rather, we test our conclusion that the [breach of a licensing agreement claim in this appeal] is not barred by § 1500 by reference to these tests simply to confirm that our conclusion remains true to the principles encompassed in that statutory provision. Thus, the fact that two suits arise from different claims under the 19th century [res judicata] tests does not compel the conclusion that the suits do not arise from substantially the same operative facts. *If two suits are determined to arise from the same claim under either of these res judicata tests, however, application of the bar of § 1500 is likely compelled.*

*Trusted Integration*, 659 F.3d at 1170 n. 5 (emphasis added).

### 1. Act or Contract Test

The Federal Circuit in *Trusted Integration* described the first res judicata test in this manner:

[T]he first test, the act or contract test, [makes] "[t]he true distinction between demands or rights of action which are single and entire, and those which are several and distinct, [in] that the former immediately arise out of one and the same act or contract, and the latter out of different acts or contracts."

659 F.3d at 1169 (quoting *Tohono O'odham*, 131 S.Ct. at 1730). In the appeal before the Federal Circuit, where the breach of a licensing agreement claim in the Court of Federal Claims arose out of a different contract than the claim in the district court, the act or contract test for res judicata was not met. *Id.* Conversely, if, in a hypothetical case, the claim in this court arose out of the same act or contract as the claim in the district court, § 1500 would "likely compel[ ]" the dismissal of the suit in this court. *Id.* at 1170 n. 5.

3. The court relies on plaintiffs' original complaint filed February 3, 2009 for the § 1500

### 2. Evidence Test

As to the second res judicata test, the Federal Circuit framed the issue in this way:

Under the second test, the evidence test, two suits involve the same claim if: "the same evidence support[s] and establish[es] both the present and the former cause of action[.]"

*Trusted Integration*, 659 F.3d at 1169 (quoting *Tohono O'odham*, 131 S.Ct. at 1730). The appellate court emphasized that to satisfy the evidence test, the evidence referenced in each suit must "both support and establish" the claims before the two courts. *Id.* (citations omitted). This res judicata test is not met if the "evidence [in the suit before this court] would be insufficient to establish the claims alleged in the district court complaint, and vice versa." *Id.* at 1170.

### III. Analysis

### A. Substantially the Same Operative Facts

■ Unfortunately for plaintiffs, their remaining claim in this court, a breach of deed covenants as to the environmental condition of the Property, is founded on substantially the same operative facts as the CERCLA claims presented to the district court. The deed covenants in question were discussed in *U.S. Home I*:

(1) the United States gives notice that no hazardous substances have been released or disposed of or stored for one year or more on the Property; (2) all remedial action necessary to protect human health and the environment has been taken before the date of this conveyance; and, (3) Grantor warrants that it shall take any additional response action found to be necessary after the date of this conveyance regarding hazardous substances located on the Property on the date of this conveyance.

92 Fed.Cl. at 407 (citations and internal quotations omitted). In their original complaint before this court, plaintiffs alleged that the United States breached these deed covenants.[3] *See* Compl. ¶ 41 ("Prior to and after

inquiry, based on binding precedent. *See, e.g., Central Pines*, 697 F.3d at 1365–67 (stating that

the sale of the Property, the government has failed to perform an investigation and remediation in accordance with its obligations under the Deeds, causing damage to Plaintiffs."). Essential to the present claim are several allegations of fact contained in the complaint, including the undisclosed contamination of the Property, the sale of the Property to plaintiffs, and the costs borne by plaintiffs as they have addressed the contamination and altered their development plans. *See* Compl. ¶¶ 9, 12, 14, 16–17, 21–25, 28–29, 31–32, 35, 37, 40, 46–61, 63–65, 67.

The District Court Complaint relied on substantially the same operative facts – the undisclosed contamination of the Property, the sale of the Property to the plaintiffs, and the costs borne by the plaintiffs as they have addressed the contamination. *See* DNJ Compl. ¶¶ 9, 12–13, 15–16, 20–24, 27–28, 32, 35, 39. The challenged conduct of the United States, which provides the operative facts underlying the suit in the district court as well as the suit in this court, is the contamination of the Property and the sale of the Property to plaintiffs. The only distinctions between the two suits are the legal theories utilized in the two suits, and the types of damages that are claimed in each suit. Because substantially the same operative facts are relied upon in the district court complaint and the complaint filed in this court, § 1500, as interpreted by *Tohono O'odham*, clearly bars plaintiffs' suit in this court.[4]

Plaintiffs rely on *Trusted Integration* in a valiant but vain attempt to avoid the application of § 1500 to their suit in this court. The court observes that *Trusted Integration* is distinguishable on its facts. The provision of information technology solutions and the breach of a licensing agreement claim were the focus of the holding in *Trusted Inte-*

*gration* relied upon by plaintiffs. 659 F.3d at 1167–70. Here, the focus is on real estate transactions and a breach of deed covenants claim as to the environmental state of the Property. These are quite different factual scenarios, and the analysis of operative facts in this case cannot be exactly the same as the analysis undertaken by the Federal Circuit in *Trusted Integration.* It is not appropriate to assume that all of the statements contained within the § 1500 analysis in *Trusted Integration,* as to the breach of a licensing agreement claim, are perfectly suited to the § 1500 analysis of claims arising from a real estate purchase.[5]

■ Plaintiffs rely largely, if not exclusively, on the res judicata evidence test, as it is expressed in *Trusted Integration,* to assert that the operative facts in the suits before this court and the district court are "sufficiently different" to escape § 1500's jurisdictional bar. Pls.' Br. at 3. Plaintiffs contend that the elements of proof for their CERCLA claims in the district court and for their breach of deed covenants claim in this court differ, and that the evidence to support those elements of proof differs as well. *Id.* at 4–7. As stated earlier in this opinion, however, the res judicata evidence test is *not* the primary test for the operative facts inquiry, but merely a secondary, confirming test. *See Trusted Integration,* 659 F.3d at 1170 n. 5. Thus, even if plaintiffs' two suits do not meet the res judicata "evidence test," this fact would not answer the question of whether the two suits share "substantially the same operative facts." *Tohono O'odham,* 131 S.Ct. at 1731.

The correct test, derived from *Keene* and *Trusted Integration,* is whether the challenged government conduct is substantially the same in the two suits. In *Trusted Integration,* the government conduct at issue in

"jurisdiction under § 1500 is dependent on the state of things at the time the action is brought," and focusing on the original complaint filed in this court for the jurisdictional inquiry). Moreover, in this case there is no difference between the operative facts cited in the original complaint and the amended complaint filed October 26, 2009 that would affect the § 1500 analysis. Thus, even if the amended complaint, rather than the original complaint in this case, were compared to the District Court Complaint, the same result would obtain.

4. There is no dispute that the district court suit was pending when plaintiffs filed their complaint in this court.

5. Similarly, statements in cases discussing the operative facts in suits by Indian tribes against the United States for breaches of fiduciary duty are not perfectly adaptable to the analysis required in this case.

this court for the breach of a licensing agreement was not the same as the conduct at issue in the district court suit the alleged licensing agreement breach was the breach of a "distinct" and "independent" contract, and concerned a contract not alleged to have been breached in the district court suit. 659 F.3d at 1168. As the Federal Circuit held, "[n]ot only are these distinct contracts [in the two suits], but their breach requires different conduct." *Id.* Here, in contrast, for the plaintiffs in the instant suit, it is the same real estate transactions that give rise to the claims in this court as well as the claims in the district court, and it is the same government conduct regarding the contamination of the Property and the sale of the Property that gives rise to the claims in each suit.

The Federal Circuit in *Trusted Integration* relied for its holding, in part, on distinct conduct of the government to differentiate between the operative facts of the two suits. 659 F.3d at 1168. Breach of the licensing agreement was a distinct act, independent from other acts of the government alleged to have breached its fiduciary duties to the plaintiff. *See id.* (distinguishing later conduct, an alleged breach of fiduciary duties, from a separate and preliminary act, an alleged breach of a licensing agreement). The Federal Circuit noted, too, that the facts related to the distinct and separate breaches were not "legally operative" in both of the suits; rather, each type of conduct was relevant to only one of the suits. *Id.* Here, the same government acts, as alleged by plaintiffs in the two suits, gave rise to the plaintiffs' claims in the district court and to plaintiffs' breach of deed covenants claim in this court. Thus, the operative facts test described in *Trusted Integration* requires the application of § 1500 and its jurisdictional bar to plaintiffs' suit in this court.

■ To the extent that plaintiffs read *Trusted Integration* to equate "operative facts" with the facts necessary to establish the elements of a particular legal theory, the court believes such a reading of *Trusted Integration* conflicts with both *Keene* and with clear statements to the contrary in the *Trusted Integration* decision itself. *See Keene,* 508 U.S. at 212, 113 S.Ct. 2035 (stating, for

the analysis of the operative facts of each action, "[t]hat [the fact that] the two actions were based on different legal theories d[oes] not matter"); *Trusted Integration,* 659 F.3d at 1164 (stating that when "[d]etermining whether two suits are based on substantially the same operative facts[,] the legal theories underlying the asserted claims are not relevant") (citations omitted). The facts necessary to establish key elements of proof for differently-packaged claims in the two suits are not perfectly synonymous with the "operative facts" in each suit – to interpret *Trusted Integration* in this fashion would be to read § 1500 too narrowly. *See, e.g., Tohono O'odham,* 131 S.Ct. at 1731 (requiring only "substantially the same operative facts" to trigger § 1500's jurisdictional bar); *Trusted Integration,* 659 F.3d at 1164 (noting that courts must "not view § 1500 narrowly"). "That certain facts may be needed to meet elements of proof of a legal theory articulated in one complaint but not the other does not prevent a finding that two complaints constitute the same claim for purposes of § 1500." *Rosebud Sioux Tribe v. United States,* 102 Fed.Cl. 429, 435 (2011) (citing *Trusted Integration,* 659 F.3d at 1166).

In accordance with a sound reading of the holding in *Trusted Integration,* the operative facts for a claim, for § 1500 purposes, are those facts which identify the government conduct which gives rise to and is relevant to that claim. *See* 659 F.3d at 1168 (distinguishing between conduct implicating distinct contracts to identify the "legally operative" facts in each suit, and noting that certain conduct relevant in the district court suit was not relevant to the breach of a licensing agreement claim before this court). Here, the facts relevant to the CERCLA claims in the district court suit are also relevant to the breach of deed covenants suit before this court; these operative facts are substantially the same in both suits. For this reason, § 1500 bars plaintiffs' remaining claim in this court.

## B. The Act or Contract Test for Res Judicata

As instructed by the Federal Circuit, the court confirms its holding by considering

whether one of the res judicata tests "likely compel[s]" a finding that plaintiffs' two suits share substantially the same operative facts. *Trusted Integration*, 659 F.3d at 1170 n.5. Indeed, the facts of this case are a clear example of two suits arising from the same contracts. Here, both the district court suit and the suit in this court arise from the real estate transfers of the Property by the United States. The remaining count of this case is founded on a deed which underlies the CERCLA claims in the district court and underlies the breach of deed covenants claim in this court. *See* Pls.' Br. at 6–7 ("A CERCLA plaintiff could be a tenant, a neighbor or a subsequent owner in the chain of title (as is plaintiff U.S. Home Corporation).").

Because the act or contract test for res judicata confirms that the suits in the district court and this court are among those " 'demands or rights of action which are single and entire,' " *Trusted Integration*, 659 F.3d at 1169 (quoting *Tohono O'odham*, 131 S.Ct. at 1730), § 1500 bars plaintiffs' suit in this court, *see id.* at 1170 n. 5. Although the result is unfortunate for these plaintiffs who have labored hard to prosecute their claims in this court, the court is not free to disregard controlling precedent. Plaintiffs' suit must be dismissed for lack of subject matter jurisdiction.[6]

### CONCLUSION

Accordingly, it is hereby **ORDERED** that

(1) The Clerk shall **ENTER** final judgment for defendant, **DISMISSING** the complaint, without prejudice; and

(2) No costs.

---

6. Plaintiffs suggest that a (second) amended complaint might cure this jurisdictional defect. Pls.' Br. at 7 n.4. The court disagrees. The operative facts, *i.e.*, the underlying government conduct, will remain substantially the same, no matter how adroitly plaintiffs restyle their complaint in this court. Furthermore, recent precedent does not appear to permit a plaintiff to cure such a jurisdictional defect with a supplemental or amended complaint. *See Central Pines*, 697 F.3d at 1367 (stating that "the Claims Court cannot retroactively acquire jurisdiction, via the filing of a supplemental complaint or otherwise, after a co-pending district court action is final"). The court acknowledges the hardship borne by plaintiffs who must be satisfied with the settlement proceeds from a district court suit when their claims before this court are barred by § 1500. *See id.* at 1367 n. 6 (noting that "§ 1500 leaves no room to account for such hardship" (citations omitted)).