NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JULIE A. BEBERMAN,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2018-1519

---

Appeal from the United States Court of Federal Claims in No. 1:17-cv-00179-PEC, Judge Patricia E. Campbell-Smith.

---

Decided: October 12, 2018

---

JULIE A. BEBERMAN, Arlington, VA, pro se.

MARGARET JANTZEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by DEBORAH ANN BYNUM, ROBERT EDWARD KIRSCHMAN, JR., CHAD A. READLER.

JONATHAN R. SIEGEL, George Washington University Law School, Washington, DC, for amicus curiae pro se.

---

Before LOURIE, CHEN, and STOLL, *Circuit Judges.*

PER CURIAM.

Appellant Julie A. Beberman appeals from a decision by the U.S. Court of Federal Claims (Claims Court) dismissing her Equal Pay Act (EPA) claim for lack of jurisdiction under 28 U.S.C. § 1500. Section 1500 states that the Claims Court shall not have jurisdiction over any claim "for or in respect to" a claim "pending in any other court" against the United States. Here, the Claims Court found that Ms. Beberman had claims pending in a Third Circuit appeal, based on a complaint filed in the U.S. District Court for the Virgin Islands (District Court), that were "for or in respect to" the same claims in the instant case. Because we find that the two cases are not "for or in respect to" the same claims, we *reverse* the Claims Court's dismissal for lack of jurisdiction and *remand* for further proceedings.

## BACKGROUND

Ms. Beberman is an employee of the State Department. She served as a Foreign Service Officer at the U.S. embassy in Caracas, Venezuela from October 2011 to November 2012. She was then reassigned to Washington D.C. and subsequently to Equatorial Guinea for a three-year tour set to conclude in 2017.

In 2014, Ms. Beberman filed an action in District Court alleging age discrimination under the Age Discrimination in Employment Act of 1967, sex discrimination under Title VII of the Civil Rights Act of 1964, and a Privacy Act of 1974 violation based on a supervisor's treatment of her during her employment in Caracas. *See Beberman v. U.S. Dep't of State*, No. 14-0020, Dkt. No. 1 (D.V.I. May 9, 2014). Ms. Beberman filed a First Amended Complaint that withdrew the sex discrimination claim,

and the parties later stipulated to dismiss the Privacy Act claim. This First Amended Complaint is the relevant complaint for purposes of this appeal because it was the operative district court complaint when the instant case was filed. *See Cent. Pines Land Co. v. United States*, 697 F.3d 1360, 1365 (Fed. Cir. 2012) ("[J]urisdiction of the court depends upon the state of things at the time of the action brought."). Beberman alleged in the First Amended Complaint that while serving at the Caracas Embassy, her supervisor discriminated on the basis of age by belittling her, publicly ridiculing her, challenging her visa adjudication decisions, terminating her access to consular systems, accusing her of violating an internal protocol known as Visa Lookout Accountability, preventing her from participating in a scheduled rotation, giving that rotation to a younger male, and subjecting the actions of another woman over the age of 40 to heightened scrutiny. *See Beberman v. U.S. Dep't of State*, No. 14-0020, Dkt. No. 21, ¶¶ 70–93 (D.V.I. May 22, 2014).

While the District Court case was ongoing, the Winter 2015 Commissioning and Tenure Board denied tenure for Ms. Beberman. Ms. Beberman, who at the time was posted in Equatorial Guinea, was then subjected to a Separation Order requiring her to leave that post and move to Washington D.C. Ms. Beberman filed an emergency motion for a temporary restraining order or a preliminary injunction with the District Court. She argued that the Caracas supervisor's discriminatory animus caused her tenure denial[1] and that until her

---

[1] Specifically, Ms. Beberman argued that her supervisor's age-based discriminatory animus and his influence on a subsequent reviewer led to a poor employee evaluation report in 2012. That report prevented her from being able to serve as a backup consular officer in Equatorial Guinea and receive any further evaluation

District Court claims were adjudicated and the legitimacy of her tenure denial determined, the State Department should be enjoined from forcing her to leave Equatorial Guinea. In that motion, Ms. Beberman identified two areas where she would suffer irreparable harm: (1) having to unexpectedly leave her residence and assignment in Equatorial Guinea and return to Washington D.C. and (2) losing substantial benefits including hardship pay, service needs differential, and access to the student loan repayment program, which were benefits of working in Equatorial Guinea, but not in Washington. *Beberman v. U.S. Dep't of State,* No. 2014-0020, 2016 WL 1181684, at *3 (D.V.I. Mar. 24, 2016), reconsideration denied, No. 2014-0020, 2016 WL 1312534 (D.V.I. Apr. 4, 2016). The District Court found that Ms. Beberman failed to demonstrate irreparable harm because if she prevailed on her lawsuit, she would be adequately compensated by money damages and equitable relief; thus, the District Court denied Ms. Beberman's motion for injunctive relief. *Id.* at *3–4. Ms. Beberman appealed to the Third Circuit, which affirmed. *Beberman v. U.S. Dep't of State*, 675 F. App'x 131, 136 (3d Cir. 2017). Significantly, Ms. Beberman's briefing to the Third Circuit and Claims Court included other harm she would suffer by having to move to Washington: "she would not eligible for Washington locality pay, per diem, or home service transfer allowance[,] and would not be allowed to access her household effects." Appx184. The Third Circuit judgment was entered on January 12, 2017, and the mandate issued on March 6, 2017.

While her Third Circuit appeal was pending, Ms. Beberman was forced to move from Equatorial Guinea to Washington D.C. Based on the circumstances of that

---

reports, thus allegedly proximately causing her tenure denial.

move, Ms. Beberman separately filed an EPA claim with the Claims Court in 2016. *See Beberman v. United States*, No. 1:16-cv-010006, Dkt. No. 1 (Fed. Cl. Aug. 15, 2016) (the 2016 Complaint). Her complaint alleged that she was forced to leave Equatorial Guinea without completing her assignment there, and that she did not receive: (1) an overnight stop en route from Africa to Washington, (2) a temporary quarters service allowance, (3) the opportunity to retrieve her household effects, or (4) a Washington locality pay or a transit subsidy when being required to work in Washington. *Id.* at ¶¶ 10–11. The complaint sets forth facts that a similarly-situated male colleague, who was also denied tenure and whose limited appointment expired on the same day, was allowed to finish his assignment overseas before being moved to Washington, that he was moved under "Permanent Changed Station" (PCS) travel orders rather than a "Separation Order," and that he received the above-enumerated benefits. *Id.* at ¶¶ 12–20.

The Claims Court dismissed Ms. Beberman's 2016 complaint for lack of jurisdiction under 28 U.S.C. § 1500. *Beberman v. United States*, 129 Fed. Cl. 539, 548 (2016). The statute states:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500. This court has interpreted § 1500 to impose two requirements in evaluating whether the section applies: "(1) whether there is an earlier-filed 'suit or process' pending in another court, and, if so, (2) wheth-

er the claims asserted in the earlier-filed case are 'for or in respect to' the same claim(s) asserted in the later-filed Court of Federal Claims action." *Brandt v. United States*, 7l0 F.3d 1369, 1374 (Fed. Cir. 2013) (citations omitted). As for step 1, the Claims Court found that Ms. Beberman had filed a case against the United States that was "pending" before two courts (the District Court and the Third Circuit). *Beberman*, 129 Fed. Cl. at 545. As to step two, the Claims Court found that the Third Circuit appeal and the 2016 Claims Court case were "for or in respect to the same claim." *Id.* at 546. The Claims Court reasoned that "[a]lthough Ms. Beberman's First Amended Complaint related to alleged discrimination in Venezuela prior to the denial of tenure, Ms. Beberman's subsequent filings [regarding her emergency motion for injunctive relief] addressed events that occurred post-denial of tenure." *Id.* Specifically, the Claims Court found that "both suits are based on substantially the same operative facts: Ms. Beberman's departure from Equatorial Guinea, the loss of overseas benefits, the lack of local benefits upon her return to Washington, and the State Department's alleged discriminatory basis." *Id.* at 547. The Claims Court found that the "directive and loss of benefits are not mere background facts, but rather are critical" to both cases, even though "her legal theories [in the cases] are somewhat different." *Id.* Thus, the Claims Court concluded that § 1500 barred Ms. Beberman's 2016 complaint and dismissed the case on jurisdictional grounds without prejudice. *Id.* at 548.

On February 6, 2017, Ms. Beberman filed a new complaint with the Claims Court (the 2017 complaint), alleging substantially similar facts and the same EPA claim as her 2016 complaint. This time, she argued, the Third Circuit appeal was no longer "pending" within the meaning of § 1500 because the Third Circuit had entered judgment denying her injunctive relief on January 12, 2017. The Government moved to dismiss Ms. Beberman's

complaint under § 1500 again, arguing that the mandate for the Third Circuit appeal had not yet issued when Ms. Beberman filed her 2017 complaint—it only issued on March 6, 2017—and therefore, the Third Circuit case was still "pending" within the meaning of § 1500.

The Claims Court granted the motion on December 21, 2017. The Claims Court agreed with the Government that an appeal is still pending until a mandate has issued. *Beberman v. United States*, 135 Fed. Cl. 336, 340–41 (2017). The Claims Court also found that the claims asserted in the Third Circuit appeal are "for or in respect to" the claims asserted in the 2017 complaint. *Id.* at 341–42.[2] Specifically, the Claims Court made findings as to the similarities between the cases, substantively reiterating the findings in its 2016 opinion, and dismissed the complaint for lack of jurisdiction pursuant to § 1500. *Id.* at 342.

Ms. Beberman timely appeals. This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) and reviews the Claims Court's dismissal for lack of jurisdiction de novo. *Petro-Hunt, L.L.C. v. United States*, 862 F.3d 1370, 1378 (Fed. Cir. 2017).

---

[2]    The Claims Court also found that "plaintiff [did] not contest defendant's assertion that the claims in this case are sufficiently similar to those in the Third Circuit appeal to meet the standard under § 1500," but instead, the plaintiff focused on whether her claims were still pending before the Third Circuit. *Id.* at 341. We note, however, that Ms. Beberman extensively contested this issue in her opposition to the Government's Motion to Dismiss below. *See* Appx351–71. Indeed, the Claims Court went on to make reviewable findings on the issue.

DISCUSSION

There are two issues in this case: (1) whether Ms. Beberman's Third Circuit appeal was still "pending" within the meaning of § 1500 if the Third Circuit had entered a judgment but a mandate had not issued, and (2) whether the Third Circuit appeal and the instant case are "for or in respect to" the same claims. In order for this court to affirm the Claims Court's decision, both questions must be answered in the affirmative. We decline to address the first issue because we reverse on the second.

"Two suits are for or in respect to the same claim, precluding jurisdiction in [this court], if they are based on substantially the same operative facts, regardless of the relief sought in each suit." *United States v. Tohono O'dham Nation*, 563 U.S. 307, 317 (2011). "Determining whether claims arise from substantially the same operative facts requires a comparison of the relevant claims." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1165 (Fed. Cir. 2011). The focus of the inquiry is the facts that give rise to the claims, not the legal theories behind the claims. *Keene Corp. v. United States*, 508 U.S. 200, 201 (1993).

The Supreme Court in *Tohono* analogized the operative facts question of § 1500 to the principles of res judicata, setting forth two governing tests for determining whether claims are precluded by their assertion in earlier litigation: the act or contract test and the evidence test. *Tohono*, 563 U.S. at 315–16. Under the evidence test, two suits involve the same claim if "the same evidence support[s] and establish[es] both the present and the former cause of action." *Id.* (quoting 2 H. Black, Law of Judgments § 726, p. 866 (1891)). Under the act or contract test, the "true distinction between demands or rights of action which are single and entire, and those which are several and distinct, is, that the former immediately arise out of one and the same act . . . and the latter out of

different acts." *Id.* (quoting J. Wells, Res Adjudicata and Stare Decisis § 241, p. 208 (1878)).

This court applied both of these tests in *Trusted Integration, Inc. v. United States* and found that a claim based on a "distinct contract" was not barred by § 1500. 659 F.3d at 1167–70. There, like here, the facts giving rise to the district court claim and the Claims Court claim arose out of a related sequence of facts: the DOJ had entered into a joint business enterprise with Trusted Integration, but chose to create its own product by copying Trusted Integration's product. This court found that the claims sharing some facts did not render the claims equivalent under Section 1500 or res judicata principles. *Id.* at 1167–69. Specifically, this court found it relevant that: (1) the claims were based on different contracts—a fiduciary duty as part of a joint venture versus a licensing agreement; (2) the DOJ conduct giving rise to each claim was different—breach of the fiduciary duty occurred by the DOJ not including Trusted Integration's product as part of its Cyber Security Assessment Management offering,[3] while breach of the licensing agreement occurred by the DOJ accessing Trusted Integration's product with the purpose of copying the program and developing its own alternative; and (3) the facts that would give rise to either breach were "not legally operative for establishing breach of the other"—the district court complaint was "based on the fact that the DOJ developed an alternative and promoted it" but "*how* the alternative was developed [was] not a legally operative fact," whereas how the alternative was developed was the "only asserted source" for the breach of licensing agree-

---

[3] This court found two other Claims Court claims based on this breach barred by § 1500. *Trusted Integration*, 659 F.3d at 1164–67.

ment claim. *Id.* at 1167–68. Similar factors are relevant in the instant case.

Here, the Claims Court analysis of the overlapping facts between the two cases is brief. The Claims Court identified the following operative facts in this case: (1) the State Department's separation order forcing Ms. Beberman to move from Equatorial Guinea to Washington, (2) the benefits Ms. Beberman lost because of being forced to switch positons without completing her assignment, including "overseas comparability pay, hardship pay, service needs differential, a cost of living allowance, housing, substantial overtime compensation, and eligibility to participate in the student loan repay program," and (3) the denial of an overnight stop en route to Washington, home leave, a temporary quarters service allowance, the opportunity to retrieve her household items, locality pay, a transit subsidy, and a formal assignment upon return to Washington. *Beberman*, 135 Fed. Cl. at 341. The Claims Court then identified what it found to be the "same set of operative facts" in the Third Circuit appeal: (1) Ms. Beberman asked the court to retain her current assignment in Equatorial Guinea until she fulfilled her assignment, (2) she requested injunctive relief to remain in Equatorial Guinea because a State Department employee's age-based discriminatory animus proximately caused her to be denied tenure, and the State Department was directing her to leave Equatorial Guinea in the middle of her three year assignment, and (3) Ms. Beberman argued that absent injunctive relief, she would lose not only her position in Equatorial Guinea, but also various benefits such as a service-needs differential and student loan repayment credit. *Id.* at 341–42.

From these findings and the Government's briefing on appeal, we ascertain that the Claims Court based its decision on two overlapping facts between the Third Circuit appeal and present case: the Separation Order and the employment benefits of being in Equatorial

Guinea versus Washington. These two facts do not provide enough overlap to conclude that the claims arise from substantially the same operative facts.

These facts are relevant to each case for substantially different reasons. In the Third Circuit appeal, Ms. Beberman was seeking an injunction against the Separation Order because she was contesting the legitimacy of her tenure denial and the allegedly age-based discriminatory animus that caused that denial. The bulk of her argument was focused on age-based discriminatory animus in Caracas. *See* Appx159–165. The appeal did not relate to the order itself, i.e. whether it should have been a Permanent Change of Station Order (as it was for a similarly-situated male) rather than a Separation Order, which is the allegation that makes the order relevant to the EPA claim at issue in the instant case. And Ms. Beberman does mention lost benefits in both. Those lost benefits were a part of the irreparable harm that Ms. Beberman argued in her Third Circuit appeal if the court allowed an allegedly illegitimate tenure denial to stand. *See* Appx212–13; *Beberman*, 675 F. App'x at 134–35. In the instant case, those benefits are mentioned as damages because the male comparator on which Ms. Beberman relies was given those benefits despite being denied tenure, while Ms. Beberman was not. Unlike in the Third Circuit appeal, these benefits are relevant to Ms. Beberman's Claims Court EPA claim regardless of the legitimacy of the tenure denial, since the male comparator received them even after being denied tenure.

Significantly, the above two facts identified by the Claims Court are not, on their own, the *operative* facts of either case. This case does not satisfy the evidence res judicata test of *Tohono* because this is not a case where the "two suits had substantial overlap of operative facts" such that Ms. Beberman "could have filed two nearly identical complaints without changing the claim in either suit in any significant way." *Cent. Pines Land Co. v.*

*United States*, 697 F.3d 1360, 1365 (Fed. Cir. 2012) (discussing *Tohono*). The operative facts of the Third Circuit appeal are Ms. Beberman's Caracas supervisor's age-based discriminatory animus towards her, the effect that animus had on her tenure denial, and the harm she would suffer if the allegedly illegal tenure denial went through while her District Court case was pending. Other than the benefits-related harm, none of these facts are in Ms. Beberman's EPA complaint before the Claims Court, nor would they be relevant to the EPA claim. The operative facts of Ms. Beberman's EPA claim are that she and a male comparator were each denied tenure, but that the two were treated differently after the tenure denial. *Beberman v. United States*, No. 18-1519, Dkt. No. 42, ¶¶ 6–7, 11–24. None of the facts as to the male comparator's treatment are part of, or relevant to, Ms. Beberman's claims in her Third Circuit appeal.

To be sure, Ms. Beberman's 2017 Claims Court Complaint lists many of the injuries she suffered due to the alleged disparate treatment she received as compared to a male comparator that she also identified in her Third Circuit Appeal as injuries that would flow from alleged age-discrimination-based denial of tenure. But, importantly, the two cases allege different facts for what caused the injuries. In other words, the complained-of government acts that give rise to the claims in the two cases are different and thus fail the "act or contract" res judicata test of *Tohono*. Before the District Court and the Third Circuit, the complained of government conduct was the discriminatory animus of her Caracas supervisor and the resulting denial of tenure for Ms. Beberman. Appx109. But before the Claims Court, the complained-of government conduct was the way it treated a male comparator after being denied tenure, as opposed to the way it treated Ms. Beberman.

Finally, no outcome in the Third Circuit appeal would have had an effect on Ms. Beberman's EPA claim before

the Claims Court. Even if the Third Circuit had found an injunction warranted, by the time of the Third Circuit's decision in early 2017, Ms. Beberman had already been forced to move from Equatorial Guinea to Washington, and the government had already engaged in the alleged differential treatment that forms the basis for her Claims Court EPA claim. Thus, the purpose of § 1500 to prevent duplicative relief is not triggered by allowing this case to proceed.

For the above reasons, while the two cases share some of the same facts, we find that the Third Circuit appeal and the underlying District Court case are not "based on substantially the same operative facts" as the present case and thus are not "for or in respect to the same claim" as required by § 1500. *Tohono*, 563 U.S. at 317.

Accordingly, we reverse the Claims Court's dismissal of Ms. Beberman's 2017 complaint for lack of jurisdiction and remand for further proceedings.

**REVERSED AND REMANDED**