# United States Court of Appeals for the Federal Circuit

---

**WINNEMUCCA INDIAN COLONY,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2024-1108

---

Appeal from the United States Court of Federal Claims in No. 1:20-cv-01618-KCD, Judge Kathryn C. Davis.

---

Decided: October 16, 2025

---

NORBERTO J. CISNEROS, Maddox & Cisneros, LLP, Las Vegas, NV, argued for plaintiff-appellant. Also represented by BARBARA MCDONALD; TREVA J. HEARNE, Reno Law Group, Reno, NV.

BENJAMIN W. RICHMOND, Environment and Natural Resources Division, United States Department of Justice, Boston, MA, argued for defendant-appellee. Also represented by AMBER BETH BLAHA, TODD KIM.

---

Before LOURIE, DYK, and CUNNINGHAM, *Circuit Judges.*

DYK, *Circuit Judge*.

The Winnemucca Indian Colony ("Colony") brought suit against the United States in the Court of Federal Claims ("Claims Court") asserting claims based on alleged statutory violations and breaches of trust duties relating to tribal land and water rights. The Claims Court dismissed for lack of jurisdiction. *Winnemucca Indian Colony v. United States*, 167 Fed. Cl. 396, 401 (2023) ("*Decision*"). The Claims Court determined that some claims were barred because they failed to identify a money-mandating source of law, some were time-barred by the statute of limitations, some were barred by 28 U.S.C. § 1500 due to an earlier filed action in district court, and some otherwise requested equitable relief outside of the Claims Court's jurisdiction. We affirm.

BACKGROUND

I.　Factual Background

The Colony is a federally recognized Indian Tribe located in northern Nevada. In 1917, President Woodrow Wilson set aside 320 acres near Winnemucca, Nevada for certain Shoshone Indians living in the area, and in 1928, Congress set aside another 20 acres. Those lands are held in trust for the Colony. The Bureau of Indian Affairs ("BIA") has authority to act on behalf of the United States with respect to certain trust responsibilities to the Colony. Members of the Colony elect a Council to represent the Colony's interests in its interactions with the BIA. Colony membership is limited to persons who are at least one-quarter Paiute or Shoshone by blood quantum, are descended from a person listed in a 1916 tribal census, and have not taken money or land as a result of membership in another tribe.

On February 22, 2000, then-Chairman of the Council Glenn Wasson was stabbed to death. The surviving Council members split into two factions: the "Wasson group" and

the "Bills/Ayer group." Both factions claimed they were the proper tribal government and entitled to control of the Colony's assets. The Wasson group claimed the leader of the Bills/Ayer group, William Bills, did not qualify for tribal membership because of his lineage and could not serve on the Council. The factions litigated the leadership dispute in tribal courts. In 2002, a specially appointed panel of appellate tribal court judges ruled in favor of the Wasson group.

For the following decade, the BIA refused to recognize either faction as the Colony's government, despite repeated requests to do so. At one point, the Interior Board of Indian Appeals, which hears appeals of BIA decisions, ordered the BIA to recognize a government. The BIA still refused to recognize a government.

## II. The Nevada Action

Subsequently, in August 2011, the Wasson group filed suit in the U.S. District Court for the District of Nevada, *Winnemucca Indian Colony v. United States*, No. 3:11-cv-622 ("the Nevada action"), seeking injunctive and declaratory relief recognizing the Wasson group as the rightful representatives of the Colony.

In the Nevada action, the Wasson group alleged that the BIA irreparably harmed the Colony by failing to recognize the Wasson group's leader as the rightful leader of the Council and by arbitrarily recognizing William Bills as part of the Council. The Colony requested a "preliminary and permanent injunction against the BIA from appointing as the government of the . . . Colony any person who does not meet" the council membership requirements, App'x 62,[1] and sought a declaratory judgment that a decision failing

---

[1]    Citations to "App'x" refer to the appendix filed by the Colony at Dkt. No. 13.

to recognize the Wasson group as the government of the Colony was error.

The allegations in the Nevada action were not limited to the tribal leadership dispute. The Colony also alleged unauthorized occupation of its land, including: that the Colony, including its rightful members, "ha[d] been effectively excluded from its own lands by the BIA"; that the BIA failed to require other persons to leave the 20-acre parcel "even though none of those persons ha[d] authority to be on the [Colony's] lands"; and that "[t]he lands of the . . . Colony continue[d] to be occupied by non[-]members of [the Colony], all allowed and supported by the BIA." App'x 54 ¶¶ 25–27. The Colony sought a declaratory judgment that:

> The failure of the BIA . . . [in] allowing any non[-]members to occupy a possessory interest in the lands of the Winnemucca Indian Colony to the exclusion of the Winnemucca Indian Colony members and government without proper federal approval and consent, violates the Non Intercourse Act, [25 U.S.C. § 177,] is an abuse of discretion, and is a breach of the trust responsibility owed by the United States of America to a federally recognized Tribe[.]

App'x 63.

The Bills/Ayers group intervened in the Nevada action, arguing that they should be recognized as the legitimate Council of the Colony and that they had a right to live and conduct business on Colony lands. Ayer Grp.'s Mot. to Intervene at 2–3, *Winnemucca Indian Colony v. United States*, No. 3:11-cv-622, Dkt. No. 18 (D. Nev. Sept. 15, 2011).

Following various rulings against the BIA, in 2012, the district court ordered the BIA to "recognize Thomas Wasson[, then the leader of the Wasson group,] as the representative of the Council until the conclusion of [the

Nevada] action" and ordered that Mr. Wasson institute a process for determining membership. S. App'x 431–32.[2] In October 2014, the Colony elected Council members. The district court ordered the BIA to recognize the election results, which favored the Wasson group. S. App'x 440. The BIA did so on December 13, 2014. The Bills/Ayer group challenged the election results in tribal courts, which dismissed the action for lack of jurisdiction. On October 1, 2018, the district court "extend[ed] comity" to the tribal court rulings. *Winnemucca Indian Colony v. United States*, No. 3:11-cv-622, 2018 WL 4714755, at *1 (D. Nev. Oct. 1, 2018). The Bills/Ayer group then appealed to the Ninth Circuit. The United States did not participate in the appeal.

On June 15, 2020, the Ninth Circuit held that the Nevada district court lacked subject matter jurisdiction, vacated the district court's orders, and remanded with instructions to dismiss. *Winnemucca Indian Colony v. United States ex rel. Dep't of the Interior*, 819 F. App'x 480, 483 (9th Cir. 2020). The Ninth Circuit issued the mandate on December 23, 2020. Following the vacatur of the district court's orders, the BIA later "continue[d] to recognize the results of [the Colony's elections]"—which have favored the Wasson group—"unless and until a tribal remedy require[d] [it] to change course." App'x 234 (letter of the Acting Regional Director of the BIA executed Jan. 11, 2022). The Nevada suit did not resolve any of the trespass claims.

### III. The Claims Court Action

On November 18, 2020, before the Ninth Circuit issued the mandate in the Nevada action, the Colony filed suit in

---

[2] Citations to "S. App'x" refer to the supplemental appendix filed by the government with its response brief at Dkt. No. 18.

the present case ("the Claims Court action"). The case comes to us on facts that have been alleged but not adjudicated. "At this stage in the proceedings, we accept the [Colony's] well-pleaded factual allegations as true." *Bd. of Supervisors of Issaquena Cnty. v. United States*, 84 F.4th 1359, 1362 (Fed. Cir. 2023) (quoting *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014)). In the operative complaint, the Colony included a history of the leadership dispute, including the various tribal court actions and the Nevada action. The Colony enumerated eleven claims for relief, six of which (Counts One, Two, Three, Five, Six, and Eight) are at issue in this appeal.[3]

Counts One and Two alleged breaches of duties relating to various unauthorized encroachments on tribal land relating to at least one road ("Highland Road"), an electrical substation, and power lines. Count Three alleged a "[b]reach of [t]rust," App'x 96, relating to the Colony's water rights due to a nearby development's diversion of a stream and its removal of water "from wells from which water was able to reach the Colony's lands," App'x 97 ¶ 168. Count Five alleged breaches of trust and violations of the Indian Non-Intercourse Act, 25 U.S.C. § 177. With respect to these Counts, the Colony alleged that the government failed to police the 320-acre parcel of land to prevent unauthorized entries and improperly conveyed interests in the land to others. Count Six alleged other breaches of fiduciary duties. The Colony alleged that the government failed to survey or protect from encroachments the 20-acre portion of the Colony's lands. The Colony alleged that "more than one structure" was placed on the land by a nearby subdivision, including "a garage, shed, part of a trailer park, road, and driveway." App'x 100

---

[3] The Colony has not appealed the dismissals of Counts Four, Seven, Nine, Ten, and Eleven.

¶ 196.  In Count Eight, the Colony sought equitable relief, demanding documents and an accounting.

The government moved to dismiss.  The Claims Court dismissed all of the claims, relying on various overlapping theories.  First, the Claims Court determined that Count Three and part of Count Six[4] failed to state a claim upon which relief can be granted because those claims did not identify violations of a money-mandating source of law as required to bring a suit against the United States for damages under the Tucker Act, 28 U.S.C. § 1491, and the Indian Tucker Act, 28 U.S.C. § 1505.  Second, the Claims Court found that Counts One, Two,[5] Three, Five, and Six were time-barred by the statute of limitations, 28 U.S.C. § 2501.  Third, the Claims Court determined it lacked jurisdiction over all of the Counts at issue on appeal under 28 U.S.C. § 1500, because the claims were substantially the same as the claims in the then-pending Nevada action. *See United States v. Tohono O'Odham Nation*, 563 U.S. 307, 311 (2011) (explaining that section 1500 bars the Claims Court from having jurisdiction over a claim "if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents").  Fourth,

---

[4]    The Claims Court "conclude[d] that Count Six should be dismissed in part for failure to state a claim upon which relief can be granted to the extent the claim rests on allegations other than those related to physical encroachments onto Colony lands." *Decision* at 414.

[5]    Count Two asserts a claim based on "a road alongside the lands of the Winnemucca Indian Colony," but does not explicitly name the road.  App'x 95 ¶ 158.  The Claims Court's statute-of-limitations determination as to Count Two applies to "Highland Road," a road named elsewhere in the operative complaint. *Decision* at 415 n.10; *see* App'x 94–95 ¶ 152.  There is no contention on appeal that the road identified in Count Two is not Highland Road.

the Claims Court determined that Count Eight's request for equitable relief was outside of the court's jurisdiction, because it depended on jurisdiction over the other Counts.

The Claims Court entered judgment on August 28, 2023. The Colony appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review de novo the Claims Court's dismissal of a complaint for lack of jurisdiction. *Fletcher v. United States*, 26 F.4th 1314, 1321 (Fed. Cir. 2022). The plaintiff bears the burden of establishing jurisdiction. *Id.* In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual allegations in the complaint, construing them in the light most favorable to the plaintiff. *Id.*

The Colony challenges each of the Claims Court's reasons for dismissing the Counts at issue on appeal. We start with the Claims Court's dismissal for lack of a money-mandating fiduciary duty, then turn to the time bar, then the dismissal pursuant to section 1500, and finally the issue of equitable relief.

## I.   Money Mandate

The Claims Court dismissed Count Three and part of Count Six for failing to identify violations of money-mandating fiduciary duties. We do not disturb the Claims Court's dismissal of part of Count Six because the Colony did not challenge that portion of the Claims Court's decision in its opening brief.[6] We affirm the Claims Court's dismissal of Count Three.

---

[6]    The Claims Court dismissed portions of Count Six, including the Colony's contentions "regarding surveying,

While the United States has a "'general trust relationship . . . [with] the Indian people,'" for the Claims Court to have jurisdiction over a claim for breach of trust or breach of fiduciary duty, a plaintiff "must identify a substantive source of law that establishes specific fiduciary or other duties." *United States v. Navajo Nation*, 537 U.S. 488, 506 (2003) ("*Navajo I*") (quoting *United States v. Mitchell*, 463 U.S. 206, 225 (1983)). The "substantive source of law" must be one that "'can fairly be interpreted as mandating compensation for damages sustained as a result of a breach of [specific fiduciary or other] duties,'" and, to establish jurisdiction, the plaintiff must allege that the "[g]overnment has failed faithfully to perform those duties." *Id.* (quoting *Mitchell*, 463 U.S. at 219).

In Count Three, titled "Breach of Trust – Water," the Colony alleged that the government allowed a third-party development company "to divert a stream and remove water from wells from which water was able to reach the Colony's lands" and hold that water in upstream wells and holding tanks, such that "there is no available water or water rights located on the 320 acres" of the Colony's land. App'x 96–97. On appeal, the Colony argues dismissal of Count Three was improper because the *Winters* doctrine

---

recognition of a tribal government, and the smoke-shop operation," for failure to fit within the scope of a money-mandating source of law. *Decision* at 414. In its opening brief, the Colony only challenged the Claims Court's "finding that a money mandate did not support Plaintiff-Appellant's *third* claim," Appellant's Br. 8 (emphasis added), and did not challenge the dismissal of this portion of Count Six for failure to identify a money-mandating source of law. Arguments not raised by an appellant in its opening brief on appeal are forfeited. *McIntosh v. Dep't of Def.*, 53 F.4th 630, 641 (Fed. Cir. 2022).

and 25 C.F.R. § 152.22 establish the required fiduciary duty and money mandate. We disagree.

Under the *Winters* doctrine, the "Federal Government's reservation of land for an Indian tribe . . . implicitly reserves the right to use needed water from various sources." *Arizona v. Navajo Nation*, 599 U.S. 555, 561 (2023) (citing *Winters v. United States*, 207 U.S. 564, 576–77 (1908)). The Colony appears to argue that the government must take affirmative actions on the Colony's behalf to protect its *Winters* water rights from third-party actions taking place outside of the Colony's land. But the *Winters* doctrine is a common law doctrine that does not, on its own, create a trust obligation.

The Supreme Court addressed this issue in *Arizona v. Navajo Nation*, 599 U.S. 555 (2023). There, the Navajo Nation filed suit seeking to compel the United States government to take affirmative steps to secure needed water for the tribe. 599 U.S. at 558–59. The Court held that the 1868 treaty establishing the Navajo Reservation reserved necessary water to accomplish the purpose of the Reservation but did not require the government to take affirmative steps to secure water for the tribe. *Id.* at 566. The Court held it would not "'apply common-law trust principles' to infer duties not found in the text of a treaty, statute, or regulation." *Id.* (quoting *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 178 (2011)); *see also id.* at 564 n.1. Thus, "[t]o maintain [a breach-of-trust] claim here, the [Colony] must establish, among other things, that the text of a treaty, statute, or regulation imposed certain duties on the United States." *Id.* at 563–64.

The Colony primarily points to 25 C.F.R. § 152.22 as providing the rights-creating duty found necessary in *Navajo I*, but that regulation does not mention water rights or establish any governmental duty relevant to the diversion of tribal water. The regulation states that "land owned by an Indian tribe may only be conveyed where specific

statutory authority exists and then only with the approval of the Secretary," unless Congress provides otherwise. 25 C.F.R. § 152.22(b). Such language does not establish a money-mandating duty relevant to Count Three. The Colony has not identified any other "treaty, statute, or regulation," *Arizona*, 599 U.S. at 563–64, that establishes an obligation for the United States to stop third-party actions relating to water rights.

We addressed a similar situation in *Ute Indian Tribe of the Uintah & Ouray Indian Reservation v. United States*, 99 F.4th 1353 (Fed. Cir. 2024). There, the Tribe alleged that the government had "duties in trust to secure new water for the Tribe, including by constructing new water storage infrastructure." *Id.* at 1364–65. The Tribe pointed to the *Winters* doctrine and federal statutes as imposing those duties. *Id.* at 1365–66. We held that the statutes did not impose trust duties to secure water for the tribe because the general instruction of one of the statutes to "otherwise protect the rights and interests of the Indians" was not specific enough to create trust duties. *Id.* at 1366, 1371. Here, too, we see no obligation for the government to take action with respect to the alleged diversion of tribal water.

Because the Colony fails to identify the source of an affirmative duty for the government to intercede, we affirm the Claims Court's dismissal of Count Three for lack of jurisdiction.

## II. Statute of Limitations

We next turn to the Claims Court's dismissal of Counts One, Two, Five, and the remaining portion of Six as time-barred under 28 U.S.C. § 2501. The statute of limitations in section 2501 is jurisdictional and requires that a claim be filed "within six years after such claim first accrues." 28 U.S.C. § 2501; *Chemehuevi Indian Tribe v. United States*, 104 F.4th 1314, 1321 (Fed. Cir. 2024). The Colony filed suit on November 18, 2020, so for its claims to be timely, they must have accrued on or after

November 18, 2014 (the "critical date"). For the purposes of section 2501, a cause of action against the government accrues "when all the events which fix the government's alleged liability have occurred *and* the plaintiff was or should have been aware of their existence." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988).

As further detailed below, Counts One, Two, Five, and the portion of Six at issue on appeal alleged various physical encroachments on the Colony's land, trespasses and continued use of those encroachments, and that the government breached its trust duties to the Colony by failing to act to prevent those encroachments and trespasses. Count One alleged that the BIA allowed the construction of Highland Road across Colony land "without the approval of the Colony and without compensation to the Colony" and "without obtaining proper approvals or consent for the right-of-way from the Tribe," and that the government has continued to "allow[] the City of Winnemucca to continue to use and maintain" the road. App'x 94–95 ¶¶ 152–54. The Colony also alleged that "the City of Winnemucca approved a subdivision for ingress and egress from a back parking lot over Colony lands without any approvals, consent or compensation to the Colony." App'x 95 ¶ 154. Count Two alleged that the government allowed an energy company to "construct an electrical substation and place overhead power lines upon Colony land" and "grade a road alongside the lands of the . . . Colony without authorization or notice to the Colony which road . . . caused erosion and disruption to the lands of the Colony," and that the government allowed the energy company to "continue to use the power lines . . . without authorization . . . ." App'x 95–96 ¶¶ 158–59. Count Five alleged breaches of trust and violations of the Indian Non-Intercourse Act related to the encroachments—namely, that the Colony "ha[d] not consented to the conveyance of any property interest in the Colony lands"; that the government failed to "protect[] . . .

the lands from encroachment" and failed to "properly po-lice[] the lands"; and that, as a result, the Colony was enti-tled to damages for the "failure to receive funds for the rights of way being utilized" for the encroachments detailed in Counts One and Two (in addition to other damages). App'x 99–100 ¶¶ 188–91. The portion of Count Six at issue on appeal alleged breaches of fiduciary duties—namely, that the government failed to protect the 20-acre parcel from encroachments including "a garage, shed, part of a trailer park, road, and driveway"; that the Colony was en-titled to damages for "loss of energy and use" resulting from those encroachments; and that the government "fail[ed] to police and protect the lands from encroachment and tres-pass." App'x 100–101 ¶¶ 196–99.

The Colony argues its claims were timely because (1) the claims did not accrue until the United States repu-diated its trust relationship with the Colony, which oc-curred in 2015 at earliest; (2) the claims did not accrue until the United States provides an accounting; (3) the claims did not accrue until the tribe was recognized by the BIA on December 13, 2014; and (4) the continuing claims doctrine applies.

The Colony's first three arguments are unpersuasive. First, the government was not required to provide a formal statement repudiating the trust for the Colony's claims to accrue in this case. As we explained in *San Carlos Apache Tribe v. United States*, an explicit repudiation is not re-quired for a claim of breach of fiduciary duty to accrue where the circumstances are "objectively sufficient to no-tify the Tribe of the alleged breach." 639 F.3d 1346, 1355 (Fed. Cir. 2011). That is the case here. The Colony fails to explain why the physical presence of the encroachments would not be "objectively sufficient to notify" the Colony of the alleged breaches.

Second, the Colony has not identified a common law re-quirement that a party be provided with an accounting

before its claim accrues in situations involving physical encroachments, such as those alleged by the Colony. The Colony points to *Shoshone Indian Tribe of the Wind River Reservation v. United States*, 364 F.3d 1339 (Fed. Cir. 2004) ("*Shoshone I*"), for the principle that "the statute of limitations [does] not commence to run against the beneficiaries until a final accounting has occurred that establishes the deficit of the trust." Appellant's Br. 16 (quoting *Shoshone I*, 364 F.3d at 1348). But *Shoshone I* involved claims of mismanagement of tribal trust funds, where a beneficiary would not be aware that a breach of fiduciary duty had occurred until an accounting had been provided. *See Shoshone I*, 364 F.3d at 1342, 1344. As we explained in *San Carlos Apache Tribe*, that principle does not apply where, as here, a final accounting is unnecessary to put the Colony on notice of the accrual of its claim. 639 F.3d at 1355.

Third, the timing of the recognition of certain tribal leadership does not change the limitations period here. The Colony primarily points to *Samish Indian Nation v. United States*, 419 F.3d 1355 (Fed. Cir. 2005) to support its position. There, we held that the Samish's claims did not accrue until they received a ruling recognizing the existence of the tribe. *Id.* at 1369. But here, the parties do not dispute that the Colony has been recognized for the entirety of the limitations period—it is only the Colony's leadership that has been in dispute. In this case, there is no question about the official recognition of the Colony as an existing tribe, and the Colony's leadership dispute does not affect the accrual of its claims.[7]

---

[7] The Claims Court acknowledged that the Colony's argument could, at best, "be construed as a claim that the lack of a BIA-recognized council created a 'legal disability' for the Colony that prevented it from filing an action, in

We now turn to the Colony's fourth argument, regarding the continuing claims doctrine. The continuing claims doctrine allows "later arising claims even if the statute of limitations has lapsed for earlier events." *Tamerlane, Ltd. v. United States*, 550 F.3d 1135, 1145 (Fed. Cir. 2008) (citation omitted). It applies where a plaintiff's claim is "inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." *Brown Park Ests.-Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1456 (Fed. Cir. 1997). "The continuing claims doctrine has been applied when the government owes a continuing duty to the plaintiffs. In such cases, each time the government breaches that duty, a new cause of action arises." *Boling v. United States*, 220 F.3d 1365, 1373 (Fed. Cir. 2000). The doctrine does not apply to single events that have continuing negative effects. *Brown Park*, 127 F.3d at 1456.

In order to avoid the statute of limitations, the Colony must establish that its claims accrued on or after November 18, 2014, i.e., within six years of the filing of the complaint on November 18, 2020. As described earlier, Counts One, Two, Five, and the remaining portion of Six allege various physical encroachments on the tribe's land and the government's failure to act to prevent those encroachments. The physical encroachments include:

which case § 2501 would entitle it to additional time to bring suit." *Decision* at 417; *see* 28 U.S.C. § 2501 ("A petition on the claim of a person under legal disability . . . at the time the claim accrues may be filed within three years after the disability ceases."). The Colony does not raise that argument on appeal. Oral Arg. at 11:02–11:07 ("Our theories have not gone under legal disability [in the appeal].").

- "a two-lane, partially paved road called Highland Road," App'x 94–95 ¶ 152;

- ingress and egress easements granted to a neighboring subdivision;

- an electrical substation;

- overhead power lines; and

- several structures, including "a garage, shed, part of a trailer park, road, and driveway," allegedly "placed on the Colony's land by a subdivision located adjacent to the [20-acre plot of the Colony's land]," App'x 100 ¶ 196.

The Claims Court found that the first four of these encroachments—the Highland Road, the ingress/egress for the neighboring subdivision, the electrical substation and the overhead power lines—were already constructed as of 2013, i.e., before the critical date. The Colony does not challenge that factual finding on appeal. The Claims Court also determined that the Colony had not met its burden to demonstrate that the allegations regarding the structures on the 20-acre plot occurred within the limitations period. The court's conclusion was based in part on satellite images from 2013, "which reveal[ed] the existence of a trailer park, road, driveway, sheds, and other structures" on the plot. *Decision* at 420. On appeal, the Colony does not dispute that the structures identified in the 2013 satellite photos were the same structures it referenced in Count Six of its complaint, *see* App'x 100 ¶ 196, nor does it dispute that the structures existed as of 2013. Accordingly, to the extent that the Colony's claims are based on the original encroachment of the structures on the Colony's land, we see no error in the Claims Court's conclusion that those claims are barred by the statute of limitations.

The Colony's allegations also, however, raise more difficult questions as to the continued use and maintenance

of the physical encroachments.[8] The Colony argues that its claims are not limited to physical encroachments and that "individual instances of trespass have occurred . . . within . . . the limitations period." Appellant's Br. 23. In its complaint, the Colony alleged that the government "fail[ed] to police and protect [the Colony's] lands from encroachment and trespass." App'x 101 ¶ 199; *see also* App'x 84 ¶ 81 (referring to the BIA's "continuing failure to secure the lands and resources of the Colony"); App'x 99–100 ¶ 190 (alleging that the government failed to remove trespassers and "affirmatively conveyed the possessory interest of the land be held by [sic] trespassers"). The Colony specifically alleged that the government "allowed the City of Winnemucca to continue to use and maintain" Highland

---

[8]    In this connection, the Colony asserts that the government has a trust duty to eject trespassers or prevent trespass on tribal land. The Claims Court did not answer this question. The court explained that "[t]he Indian Long-Term Leasing Act[, 25 U.S.C. § 415,] requires the Government to approve leases of Indian land," that the Act and its implementing regulations "impose on the Government money-mandating fiduciary duties in the tribal leasing context," and that the Act thus "supplie[d] a money-mandating source of law" to the extent the Colony alleged that the government "mismanaged the leasing of residential properties on the Colony's land." *Decision* at 413 (citing *Brown v. United States*, 86 F.3d 1554, 1562–63 (Fed. Cir. 1996)). It did not address whether the government has a continuing duty to otherwise stop trespasses to tribal land. On appeal, the Colony argues that the Indian Long-Term Leasing Act and its implementing regulations establish such a duty, relying primarily on *Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18 (1st Cir. 2007) to support its theory. Appellant's Reply Br. 16–17. The government disagrees.

Road, App'x 95 ¶ 153, and "allowed [an energy company] to continue to use the power lines." App'x 95–96 ¶ 159.

The Colony argues that the Claims Court erred in treating all of the trespass allegations as "continued ill effects" of the physical encroachment allegations. *Decision* at 418 (citation omitted). The Colony's trespass allegations appear to rely on a continuing trespass theory like the one we addressed in *Shoshone Indian Tribe of Wind River Reservation v. United States*, 672 F.3d 1021 (Fed. Cir. 2012) ("*Shoshone II*"). Under that theory, "each trespass is its own cause of action with its own six-year statute of limitations." *Id.* at 1035. Accordingly, the Colony argues that "[a]ssuming the Government had a duty to eject the trespassers, every time the Government failed to remove the trespassers, a new cause of action arose." Appellant's Br. 24 (quoting *Shoshone II*, 672 F.3d at 1035 n.9). The Colony's theory thus seems to be that it could still timely bring suit for any such injuries incurred on or after November 18, 2014 (i.e., within six years of filing suit in the Claims Court).

While this case raises important and difficult questions as to the scope of the continuing claims doctrine, we think it inadvisable to resolve those questions now, given the sparse record and limited briefing on the issues. We need not decide whether the Colony's theories as to the continuing claims doctrine are correct, because, as discussed in the following section, we affirm the dismissal of these claims on other grounds.

### III. Section 1500

Section 1500 provides that the Claims Court "shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States." 28 U.S.C. § 1500. The statute's aim is to "save the Government from burdens of redundant litigation." *Tohono O'Odham*, 563 U.S. at 315. "[T]o determine whether § 1500 applies, a

court must make two inquiries: (1) whether there is an earlier-filed 'suit or process' pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are 'for or in respect to' the same claim(s) asserted in the later-filed Court of Federal Claims action." *Res. Invs., Inc. v. United States*, 785 F.3d 660, 664 (Fed. Cir. 2015) (quoting *Brandt v. United States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013)).

Since the Nevada action was filed first and remained pending when this suit was filed, only the second inquiry is in dispute in this appeal. "Two suits are for or in respect to the same claim . . . if they are based on substantially the same operative facts, regardless of the relief sought in each suit." *Tohono O'Odham*, 563 U.S. at 317. If the section 1500 bar applies, it attached "when plaintiffs filed their Claims Court action," and we must therefore "compare the operative facts asserted at the time the two complaints were filed." *Cent. Pines Land Co. v. United States*, 697 F.3d 1360, 1364 (Fed. Cir. 2012); *see also Keene Corp. v. United States*, 508 U.S. 200, 207–09 (1993). The Colony argues that the Nevada action did not involve substantially the same set of facts as the Claims Court action and so the Claims Court erred in determining it lacked jurisdiction over Counts One, Two, Three, Five, Six, and Eight pursuant to 28 U.S.C. § 1500.[9]

---

[9]    The government argues that the Colony forfeited this argument by failing to raise it to the Claims Court. To the extent the Colony failed to properly preserve its argument for appeal, we exercise our discretion to consider it in the first instance. *Medtronic, Inc. v. Teleflex Innovations S.À.R.L.*, 68 F.4th 1298, 1305 (Fed. Cir. 2023) ("[E]ven if an issue was not presented below, there is no absolute bar to considering and deciding the issue on appeal, as forfeiture is a matter of discretion."); *Singleton v. Wulff*,

We need not reach the Colony's section 1500 arguments as to many of the appealed claims because, as explained above, we affirm the dismissal of those claims on other grounds. As to the surviving claims concerning continuing trespass—the portions of Counts One, Two, Five, and Six that are alleged to have accrued on or after November 18, 2014—we affirm the Claims Court's dismissal under section 1500.[10]

The Supreme Court examined section 1500 in *Tohono O'Odham*. There, the tribal nation filed two complaints, one in district court and one in the Claims Court, that "alleged almost identical violations of fiduciary duty, for which it requested money damages." 563 U.S. at 310. The Court determined that "the substantial overlap in operative facts" triggered section 1500's jurisdictional bar. *Id.* at 318.

Here, much of the subject matter of the Nevada complaint, such as the BIA's failure to resolve the tribal leadership dispute, may be ultimately irrelevant to the disposition of the surviving claims, which involve third-party encroachments and related trespasses. The problem for the Colony is that the Nevada action included significant and broad allegations of trespass and occupation.

---

428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.").

[10]   The government acknowledges that section 1500 is applied on a claim-by-claim basis. Oral Arg. at 15:57–16:04 (admitting that "[i]f there are counts [in the Claims Court complaint] that don't involve overlap [with the Nevada complaint], then the section 1500 bar wouldn't apply").

Those allegations are sufficient to trigger section 1500 and bar the surviving claims.

In the Nevada complaint, the Colony alleged that the BIA "allowed and supported" "[t]he lands of the . . . Colony [to] continue to be occupied by non[-]members of [the Colony]," App'x 54 ¶ 27, and that "[t]here ha[d] been no federal consent to convey any interest in the . . . Colony lands including any possessory interest," App'x 56 ¶ 36. These allegations are operative facts in the Claims Court complaint. As described earlier, the complaint here alleges claims that the government allowed continuing trespasses on tribal land. These overlapping facts "are not mere background facts; they are critical to [the Colony's] claims in both actions." *Cent. Pines*, 697 F.3d at 1365. We thus conclude that the appealed portions of Counts One, Two, Five, and Six that are alleged to have accrued on or after November 18, 2014, are barred by section 1500, and affirm the Claims Court's dismissals under that section.

This ruling does not, of course, bar the Colony from initiating a new lawsuit covering the subject matter of the continuing trespass allegations and, in that suit, attempting to overcome any statute of limitations bar. *Res. Invs.*, 785 F.3d at 670 (holding that plaintiff's claims were barred by section 1500 but noting that plaintiff could have earlier "dismissed and refiled its Claims Court action" following the conclusion of the barring district court action).

## IV. Equitable Relief

In Count Eight, the Colony demands equitable relief in the form of "[d]ocuments and [an a]ccounting." App'x 102. The Claims Court determined that such a request was outside its jurisdiction.

The Claims Court generally does not have jurisdiction to grant equitable relief, subject to a few exceptions, such as when the equitable relief is "ancillary to claims for monetary relief over which [the Claims Court] has jurisdiction."

*Nat'l Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716 (Fed. Cir. 1998). The Colony appears to acknowledge that Count Eight rises and falls with the determination of jurisdiction over its substantive claims. *See* Appellant's Reply Br. 24–25. Because none of the Colony's claims for monetary relief remain pending, we affirm the Claims Court's dismissal of Count Eight.

## CONCLUSION

For the foregoing reasons, we affirm the Claims Court's dismissal of the Colony's complaint.

## **AFFIRMED**

### COSTS

No costs.